THE STATE OF OHIO, APPELLANT, *v.* ULRICH, APPELLEE.

(No. WD-83-42—Decided January 13, 1984.)

*William F. Hayes,* prosecuting attorney, for appellant.

*Thomas L. Bischoff,* for appellee.

RESNICK, J. Michael Ulrich, appellee herein, was charged with violating R.C. 4511.19(A)(1), 4511.19(A)(3), and 4511.33 in Wood County, Ohio, on April 2, 1983. Subsequently, the appellant, state of Ohio, dismissed the charges concerning R.C. 4511.33 (failure to drive within marked lanes) and R.C. 4511.19(A)(1) (operating a vehicle within the state while under the influence of alcohol). Appellee's alleged violation of R.C. 4511.19(A)(3) (operating a motor vehicle with a concentration of .10 grams or more by weight of alcohol per two hundred ten liters of breath) proceeded to trial in the Perrysburg Municipal Court.

A trial to the court was conducted on May 31, 1983, at which time the arresting officer testified, *inter alia,* as to his qualifications in operating the intoxilyzer, the method or procedure which was followed in administering the intoxilyzer test, and that the intoxilyzer test was performed within two hours of the time from which appellee's alleged violation occurred.[1] Important, however, is the fact that the time of appellee's alleged violation of R.C. 4511.19(A)(3) was 3:03 a.m., and the record indicates that the intoxilyzer test was administered to appellee at 3:40 a.m., some thirty-seven minutes after appellee was charged with the alleged offense. The intoxilyzer test result, which was .162 percent, was properly admitted into evidence at the trial.

At the conclusion of the state's case, appellee moved for dismissal of the charge which alleged that appellee had violated R.C. 4511.19(A)(3). The trial court granted appellee's motion to dismiss and, in its decision of May 31, 1983, found appellee not guilty of violating R.C. 4511.19(A)(3). In so deciding, the trial court held that the

---

[1] The procedure used in giving the test, the officer's qualifications to give the test, and the general reliability of the intoxilyzer are not at issue in the instant appeal. For a discussion of the proper foundation evidence which must be elicited prior to admitting the result of the chemical analysis, see *Aurora* v. *Kepley* (1979), 60 Ohio St. 2d 73 [14 O.O.3d 273]; *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79 [72 O.O.2d 44]; *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], paragraph six of the syllabus; *Cincinnati* v. *Duhart* (1974), 41 Ohio App. 2d 127 [69 O.O.2d 479]; *State* v. *Miracle* (1973), 33 Ohio App. 2d 289, 293-296 [62 O.O.2d 440]; and *State* v. *Sickles* (1970), 25 Ohio App. 2d 1 [54 O.O.2d 3].

state must produce "some type of expert testimony that will relate a test result back to the time of driving."[2]

From the trial court's May 31st judgment entry, the state filed a notice of appeal and a motion for leave to ap-

[2] The trial court's holding is more fully set forth below:

"[T]he defendant also contends that the test results of the defendants [sic] level is not evidence that the test level at the time of driving. It is to be noted that the statute does state the violation occurs if a person is operating a vehicle with the forbidden concentration of alcohol, in this case in the breath, the 210 liters of breath. I think you have to review the history of 4511.19, its [sic] been the contention of the State that there was no alcohol consumed between the time of the arrest and the test and therefore the .162 that appeared on the test a mere 37 minutes beforehand would accurately or would at least close enough indicate that the level was that it would presumably be something over .10 at the time of the driving.

"I am not persuaded by that particular argument, and I feel that in knowing that it may require and burden the State with at least some type of expert testimony that will relate a test result when taken back to the time of the driving, I think that is exactly what is going to be required by the State. At one time, in looking at the statute prior to the enactment of the new DWI law, there was, of course, the presumption that if a test result taken within two hours was made, that that test result would give rise to a rebuttal presumption that the defendant was driving under the influence of alcohol. Well, in short, underlying the basis is the fact that the statute in that particular instance, was in reality stating that there could be an evidentiary presumption that a test within two hours of the driving could be presumed to be a test result that the level of the alcohol was at least up to the point where the defendant's ability to drive was appreciably impaired. That has been removed, and I think it is the removal by the State of that type of rebuttable presumption which does relate back from the test results at the time of the taking of the test to the time of the driving, which is important. It's no longer in the statute, and although, it might be argued on the basis of some common experience that defendant's test couldn't have risen that much in the 37 minutes, particularly since there was no con-

sumption of alcohol, but I don't think that holds true. I think that its [sic] up to the State to show that at the time of the test that there was a .10 or more and although I've heard many many cases, and I've heard much testimony I think that these are facts that are outside the realm of this particular case and any other case and I cannot take judicial notice of certain things that I've heard in the course of other tests. I can't, for instance, take judicial notice of burnoff rates, I don't think I can take judicial notice of what an alcohol level would be and how its [sic] affected by reason by ones [sic] weight, ones [sic] consumption of alcohol and the like. I think that the State has got a perse * * * its called a perse presumption, but that doesn't shortcut the State from, at least now going back to the point and relating it through expert testimony or some other type of testimony that would allow this court to take notice that * * * and recognize within the confines of the case itself, that the defendant's level of blood or the breath level that's prescribed under A3 was either equal or exceeding and hence I am persuaded by the second argument of the defense counsel, I recognize that it's going to cause problems as far as the State is concerned, they are going to have to bring in expert witnesses I suppose, unless you have virtually a test that is so contemporaneous with the driving itself that it could be otherwise considered in the realm of common experience to be virtually the same. But I can't say that 38 minutes afterwards is within that contemporaneous period of time and I think that I have to look at what the State legislature in its infinite wisdom has done and considering the fact that it took away a presumption of a sort which related back, I cannot now put it back into the statute and read that superceded [sic] statute with a new statute, in short, the State has a lot of things going for it but at this point I'm not going to say that it is entitled to take a test for up to two hours or even up to 38 minutes as I'm holding now or 37 minutes. Excuse me I think it's 36 minutes, it's 304 minus 330 [sic]. I don't think that the State can short circuit the requirements of the statute, particularly in light of what has been superceded [sic] by legislature."

peal on June 29, 1983. This court, on August 8, 1983, issued its opinion wherein it denied the state an appeal as of right, but granted the state leave to appeal the narrow question of whether the state, to sustain its burden of proof in a prosecution for an alleged violation of R.C. 4511.19(A)(3), is required to produce expert testimony in order to correlate the result of the intoxilyzer test to the time of driving. *State* v. *Ulrich* (1983), 17 Ohio App. 3d 179. The case is now before this court on the merits.

In the instant appeal, we are called upon to interpret certain language of R.C. 4511.19(A) and (B), effective March 16, 1983.[3] R.C. 4511.19(A) states that:

"No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:

"(1) The person is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse;

"(2) The person has a concentration of ten-hundredths of one per cent or more by weight of alcohol in his blood;

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

"(4) The person has a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine."

In relevant part, R.C. 4511.19(B) provides that:

"In any criminal prosecution for a violation of this section or of an ordinance of any municipal corporation relating to operating a motor vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation."

In matters of statutory interpretation, we recognize that it is well-settled in this state that "when comparable legislation has been construed in other jurisdictions prior to the enactment of a similar Ohio statute, the interpretation given the law in other jurisdictions is to be given great weight in construing the Ohio statute." *Koster* v. *Boudreaux* (1982), 11 Ohio App. 3d 1, 6-7. See, also, *Schneider* v. *Laffoon* (1965), 4 Ohio St. 2d 89, 96 [33 O.O.2d 468]; *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.* (C.A. 6, 1972), 466 F. 2d 220, 225 [65 O.O.2d 279]. Further, we note that the legislature is "presumed to be aware of, and to legislate in light of, the construction given to an area of law by other state courts." *Koster, supra; In re Thomas* (N.D. Ohio 1981), 14 Bankr. 423, 427; see *In-Flight Devices, supra,* at 225.

Undoubtedly, "[t]he purpose of the General Assembly is a dominant fact in determining the meaning of any statutory legislation." *State* v. *Glass* (1971), 27 Ohio App. 2d 214, 218 [56 O.O.2d 391]. Although criminal statutes must be construed strictly against the state, *State* v. *Dickinson* (1971), 28 Ohio St. 2d 65, 67 [57 O.O.2d 255]; *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], paragraph two of syllabus; R.C. 2901.04(A), it is equally true that statutes must be read in a manner which effectuates, rather than frustrates, the major purpose of the legislative draftsmen. *State* v. *Glass, supra,* at 219; see *Giordano, supra,* paragraph three of syllabus. It has been said several times that the primary purpose of statutes which make operating a vehicle while influenced by alcohol an offense is to pro-

---

[3] The state has gone to great lengths in its brief expounding upon the constitutionality of Ohio's new drunk driving law, effective March 15, 1983. The question of constitutionality, however, is not before this court.

tect the innocent users of streets and highways from the hazard of vehicles under the management of those irresponsible persons who insist on driving while so influenced. See *Giordano, supra,* at 145; *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346, 348 [69 O.O.2d 312]; *State* v. *Kivell* (1983), 11 Ohio App. 3d 12, 13. In light of the above-stated guidelines for statutory interpretation and the stated purpose of such legislation, we now proceed with our analysis of the state's sole assignment of error, which is:

"When dealing with the charge of 4511.19(A)(3) O.R.C., it is prejudicial error for the court to require expert testimony to prove a prima facie case."

The facts of the instant case indicate that appellee moved for dismissal of the charge regarding the alleged violation of R.C. 4511.19(A)(3) after the state presented its case and the trial court, pursuant to appellee's request, took judicial notice of "Ohio Department of Health Official Instruction No. 008." Keeping in mind that the authority for appellee's motion is contained within Crim. R. 29(A),[4] it is well-settled that a judgment of acquittal shall not be entered at the close of the state's case "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401], syllabus. See, also, *State* v. *Thomas* (1980), 61 Ohio St. 2d 223, 232-233 [15 O.O.3d 234]; *State* v. *Adams* (1982), 3 Ohio App. 3d 50, 56; *State* v. *Bronaugh* (1980), 69 Ohio App. 2d 24 [23 O.O.3d 23]. Although the present case was tried to the court rather than to a jury, a mo-

tion for acquittal at the close of the state's case "performs the same functions and is governed by the same considerations as a similar motion at a trial by jury." *United States* v. *Hufford* (D. Pa. 1952), 103 F. Supp. 859, 860. "The standard for ruling on a judgment of acquittal is the same, regardless of whether the case was tried by a jury or by a court alone * * *." *United States* v. *Silberman* (D. Fla. 1979), 464 F. Supp. 866, 869.

Accordingly, our analysis must focus upon whether an intoxilyzer test result of .10 percent or greater, absent expert testimony introduced by the state which correlates the test result to the time of operation of a vehicle, rises to such a level of sufficiency that reasonable minds can reach different conclusions as to whether the state has proved beyond a reasonable doubt that a person charged with violating R.C. 4511.19(A)(3) operated a vehicle at or above the proscribed statutory alcohol concentration level.

## I

The Ohio General Assembly, by its passage of R.C. 4511.19, effective March 16, 1983, has made it illegal to operate a vehicle not only while under the influence of alcohol (R.C. 4511.19 [A][1]), but also with a proscribed level of alcohol content in one's blood (R.C. 4511.19[A][2]), breath (R.C. 4511.19 [A][3]), or urine (R.C. 4511.19[A][4]). Under prior law, an intoxilyzer test result which revealed a blood alcohol content by weight (hereinafter "BAC") of .10 percent or greater, gave rise to a rebuttable presumption that the alleged offender was under the influence of alcohol at the time of the alleged of-

---

[4] Crim. R. 29(A) states in relevant part:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"

fense. As the trial judge in the case *sub judice* specifically addressed in his holding, the new legislation has eliminated any mention of the term "presumption." (See fn. 2, *supra.*)

The new R.C. 4511.19, effective March 16, 1983, however, specifically provides a proscription against operating a vehicle with a concentration of .10 grams or more by weight per two hundred ten liters of breath. R.C. 4511.19(A)(3). Inherent in the language of the statute is the legislature's determination and declaration that a concentration of .10 grams or more by weight of alcohol per two hundred ten liters of breath makes it dangerous for a person to operate a vehicle. Cf. *Murray City* v. *Hall* (Utah 1983), 663 P. 2d 1314, 1318. Also, it has been stated that such a proscription "represents a legislative determination that such quantity of alcohol has sufficient adverse effect upon any person to make his driving a definite hazard to himself and others. We cannot

say that this determination is unfounded or contrary to the facts; a number of studies and many statistics have recently been published by experts in this field which support that conclusion." *Coxe* v. *State* (Del. 1971), 281 A. 2d 606, 607.

At times, albeit, there may exist no observable symptoms of intoxication at the alcohol concentration level prohibited by R.C. 4511.19(A)(3). The legislature, notwithstanding this fact, has determined that based upon scientific studies and acceptable medical knowledge, the physical and mental condition of a driver with such a proscribed level of alcohol in one's system is impaired to such a degree that it is unsafe for that person to operate a vehicle, regardless of whether observable symptoms exist. *State* v. *Clark* (1979), 286 Ore. 33, 39, 593 P. 2d 123, 126.

Our independent research has indicated several states, see, *e.g.*, Alabama,[5] Alaska,[6] California,[7] Delaware,[8] Florida,[9] Michigan,[10] Min-

---

[5] Ala. Code Section 32-5A-191 (1983) materially provides:

"(a) A person shall not drive or be in actual physical control of any vehicle while:

"(1) There is 0.10 percent or more by weight of alcohol in his blood."

[6] Alaska Stat. Section 28.35.030 (Supp. 1983) states in relevant part :

"(a) A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle * * *

"* * *

"(2) when, as determined by a chemical test taken within four hours after the alleged offense was committed, there is 0.10 percent or more by weight of alcohol in the person's blood or 100 milligrams or more of alcohol per 100 milliliters of blood, or where there is 0.10 grams or more of alcohol per 210 liters of the person's breath."

[7] Cal. Veh. Code Section 23152 (Supp. 1983) (West) provides in pertinent part:

"(b) It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

"For purposes of this subdivision, per-

cent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood."

[8] Del. Code Ann. Title 21, Section 4177 (Supp. 1982) sets forth in pertinent part:

"(a) No person shall drive, operate or have in actual physical control a vehicle * * * while under the influence of alcohol.

"(b) Any person charged under subsection (a) of this section whose blood alcohol concentration is one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty of violating subsection (a) of this section. * * *"

[9] Fla. Stat. Ann. Section 316.193 (Supp. 1983) materially sets forth:

"(1) It is unlawful * * * for:

"* * *

"(b) Any person with a blood alcohol level of 0.10 percent or above to drive or be in actual physical control of any vehicle within this state."

[10] Mich. Comp. Laws Ann. 257.625 (Supp. 1983-84) relevantly states:

nesota,[11] Oregon,[12] South Dakota,[13] Utah,[14] Vermont,[15] and Washington,[16] which have made it a criminal offense for a person to drive and/or operate a vehicle when that person's alcohol concentration reaches or exceeds a certain legislatively determined level.

Among these jurisdictions, however, various methods of legislating the prohibition of driving with the specific alcohol content have been utilized. See *State* v. *Franco* (1982), 96 Wash. 2d 816, 820-821, 639 P. 2d 1320, 1322. Some jurisdictions, for example, make driving with a proscribed level of alcohol in one's blood a separate and distinct offense. See, *e.g.,* Ala. Code Section 32-5A-191 (1983) (see fn. 5, *supra*); Cal. Veh. Code Section 23152 (Supp. 1983) (West) (see fn. 7, *supra*); Fla. Stat. Ann. Section 316.193 (Supp. 1983) (see fn. 9, *supra*); Mich. Comp. Laws Ann. Section 257.625 (Supp. 1983-84) (see fn. 10, *supra*); Minn. Stat. Ann. Section 169.121 (Supp. 1983) (see fn. 11, *supra*); S.D. Cod. Laws Ann. Section 32-23-1 (Supp. 1983) (see fn. 13, *supra*); Utah Code Ann. Section 41-6-44 (Supp. 1983) (see fn. 14, *supra*); Vt. Stat. Ann. Title 23, Section 1201 (Supp. 1983) (see fn. 15, *supra*). Other jurisdictions, however, have made operating or driving a vehicle with a certain alcohol content level an alternative method of committing a crime of driving while under the influence of intoxicants. See, *e.g.,* Alaska Stat. Section 28.35.030 (Supp. 1983) (see fn. 6, *supra*); Ore. Rev. Stat. Section 487.540 (1981) (see fn. 12,

---

"(2) A person, whether licensed or not, whose blood contains 0.10% or more by weight of alcohol, shall not operate a vehicle upon a highway or other place open to the general public, * * * within the state."

[11] Minn. Stat. Ann. Section 169.121 (Supp. 1983) states in pertinent part:

"Subdivision 1. Crime. It is a misdemeanor for any person to drive, operate or to be in physical control of any motor vehicle within this state:

"* * *

"(d) When the person's alcohol concentration is 0.10 or more."

[12] Ore. Rev. Stat. Section 487.540 (1981) materially provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives the vehicle while the person:

"(a) Has .10 percent or more by weight of alcohol in the blood of the person as shown by a chemical analysis of the breath, blood, urine or saliva of the person * * *."

[13] S.D. Cod. Laws Ann. Section 32-23-1 (Supp. 1983) relevantly sets forth:

"A person may not drive or be in actual physical control of any vehicle while:

"(1) There is 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood or other bodily substance."

[14] Utah Code Ann. Section 41-6-44 (Supp. 1983) sets forth in pertinent part:

"(1) It is unlawful * * * for any person with a blood alcohol content of .08% or greater by weight * * * to drive or be in actual physical control of a vehicle within this state. * * *"

[15] Vt. Stat. Ann. Title 23, Section 1201 (Supp. 1983) relevantly provides:

"(a) A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway while:

"(1) there is .10 per cent or more by weight of alcohol in his blood, as shown by analysis of his breath or blood."

[16] Wash. Rev. Code Section 46.61.502 (1981) provides in relevant part:

"A person is guilty of driving while under the influence of intoxicating liquor * * * if he drives a vehicle within this state while:

"(1) He has a 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of this breath, blood, or other bodily substance * * *."

Wash. Rev. Code. Section 46.61.504 (1981) sets forth the same prohibited level of alcohol concentration for being in actual physical control of a vehicle while under the influence of intoxicating liquor.

*supra*); Wash. Rev. Code Section 46.61.502 (1981) (see fn. 16, *supra*). See, also, Del. Code Ann. Title 21, Section 4177 (Supp. 1982) (see fn. 8, *supra*).

Essentially, what the Ohio General Assembly has done in drafting R.C. 4511.19(A) is to set forth certain conditions under which it is illegal to operate a vehicle within the state of Ohio. A person is prohibited from operating a vehicle in this state when, as under prior law, that person is under the influence of alcohol. R.C. 4511.19(A)(1). Further, however, a person is also prohibited from operating a vehicle within this state if that person has a concentration of alcohol by weight which is at or above the proscribed level in one's blood, breath, or urine at the time of the alleged violation *as shown by chemical analysis* of the defendant's blood, urine, breath, or other bodily substance *withdrawn within two hours of the time of the alleged violation.* R.C. 4511.19 (A)(2), (3) and (4); 4511.19(B).

Significantly, prior law has been changed in at least one very important way: proof that an alleged offender's BAC was .10 percent or greater at the time of the alleged offense does not merely establish a rebuttable presumption that the alleged offender is under the influence of intoxicants; rather, if the state proves beyond a reasonable doubt that an alleged offender had a concentration of .10 grams or more by weight of alcohol per two hundred ten liters of breath at the time of the alleged offense, that alleged offender is guilty of violating R.C. 4511.19(A)(3). See R.C. 4511.99(A).[17] In point of fact, the offense (violation of R.C. 4511.19[A][3]) is complete upon driving with the requisite prohibited level of alcohol in one's breath. Cf. *State* v. *Rollins* (1982), 141 Vt. 105, 109, 444 A. 2d 884, 886. The present statute does not presume;

rather, it defines what specific conduct is prohibited. Only two elements need be proved beyond a reasonable doubt by the state to prevail in a prosecution under R.C. 4511.19(A)(3). They are: (1) operation of a vehicle within the state by the alleged offender, and (2) that at the time of the alleged offense, the alleged offender possessed the prohibited breath alcohol content. Cf. *State* v. *Gerdes* (S.D. 1977), 252 N.W. 2d 335, 336; and *Coxe, supra,* at 607.

## II

Having analyzed the purpose, elements, and effect of R.C. 4511.19(A), we proceed to our discussion of R.C. 4511.19(B), which states in relevant part:

"In any criminal prosecution for a violation of this section or of an ordinance of any municipal corporation relating to operating a motor vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation."

Initially, it is of paramount importance to note that the legislature has not made the result of the intoxilyzer test an element of the offense. Restated, the specific conduct which is proscribed by R.C. 4511.19(A)(3) is for a person to operate a vehicle within this state with a concentration of .10 grams or more by weight of alcohol per two hundred ten liters of breath, as shown by a test given within two hours of the time of the alleged violation. Although not an element of the crime, the intoxilyzer test result is an element of proof of the offense, an

---

[17] R.C. 4911.99(A) relevantly states: "Whoever violates section 4511.19 of the

Revised Code is guilty of a misdemeanor of the first degree * * *."

element of proof which this court believes should be given great weight.

In addressing the legal sufficiency of the intoxilyzer test result, the trial court essentially stated that without expert testimony which related the intoxilyzer test result back to the time of driving, the state had failed to prove an essential element of the offense, that element being that at the time of the offense, appellee had an alcohol concentration in his breath at or beyond the level proscribed by R.C. 4511.19(A)(3). Our research indicates that one state supports the trial judge's position.

The Vermont Supreme Court, in *Rollins, supra,* at 110, 444 A. 2d at 886, similarly held in a prosecution pursuant to Vt. Stat. Ann. Title 23, Section 1201 (see fn. 15, *supra*) that:

"[T]o fulfill its burden of proof, the prosecution must do more than offer the requisite chemical test. The State must also establish that the .10% level existed at the time of operation [of the vehicle]. In this case, it was incumbent upon the prosecution to relate back the .24% reading from 9:14 p.m. (time of the test) to 7:45 p.m. (last time of operation)."

Although this may be the state of the law in Vermont, it also appears from our research that the Vermont Supreme Court stands alone in this view.

The relevant portion of R.C. 4511.19 (B), with which we are concerned, states:

"* * * [T]he court may admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation." (Emphasis added.)

It is clear from the presence of this express language that the legislature intended the results of an intoxilyzer test to be admitted as evidence of the defendant's concentration of alcohol in his breath at the time of the defendant's alleged violation, provided that the intoxilyzer test was administered according to R.C. 4511.19(B). Accordingly, the gravamen of the offense (R.C. 4511.19 [A][3]) is the operation of a vehicle within the state after ingestion of a sufficient amount of alcohol to produce an intoxilyzer test result which evidences an alcohol concentration level proscribed by statute within two hours of the time that the alleged offense occurred. Cf. *People* v. *LaMontagne* (1977), 91 Misc. 2d 263, 264, 397 N.Y.Supp. 2d 872, 873. The writer finds it most difficult to understand the reasoning of the trial judge when he discusses the necessity of expert testimony as to burn-off rates. Even the most cursory reading of the statute makes it readily apparent that the legislature intended an intoxilyzer test result obtained within two hours of the alleged violation to indicate the level of intoxication at the time of the driving. Otherwise, it would be virtually impossible to convict any person of the offense of operating a vehicle within the state while that person possessed the prohibited breath alcohol content because of "the impossibility of administering the test concurrently with operation of the vehicle." *LaMontagne, supra,* at 264, 397 N.Y. Supp. at 872.

The states which do not require expert testimony to relate the results of the intoxilyzer test treat the issue in various ways. The present legal thought in Alaska is that the intoxilyzer test result is viewed as the "presumptive equivalent of the amount of alcohol in the alleged offender's blood 'at the time [of the] alleged [offense]'; [or] in other words, at the time that the offense was committed." *Doyle* v. *State* (Alaska App. 1981), 633 P. 2d 306, 310. A similar position is espoused by the California Legislature in the enactment of Cal. Veh. Code Section 23152 (West) (Supp. 1983), see fn. 7, *supra.* Subdivision (b) of

this California statute makes it unlawful for a person with .10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. Further, however, subdivision (b) continues:

"In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.10 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had a 0.10 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after driving."

In the state of Washington, the view is that an intoxilyzer test result administered within the statutory time "may be considered as circumstantial evidence that * * * [the defendant's] blood alcohol content was at that level (or higher) while * * * [the defendant] was driving." *State* v. *Bence* (1981), 29 Wash. App. 223, 227, 627 P. 2d 1343, 1346. The Minnesota Legislature, perhaps the most emphatic, pronounced in Minn. Stat. Ann. Section 169.121 Subd. 2 (Supp. 1983), that "the result of an evidentiary test administered within two hours of the alleged violation is deemed to be the alcohol concentration at the time of the violation."

Clearly, it is the intent of the Ohio Legislature in prosecutions under R.C. 4511.19(A)(3) to have admitted, as evidence of the alleged offender's concentration of alcohol in the alleged offender's breath at the time of the alleged offense, a chemical analysis of the alleged offender's breath provided that the breath sample was withdrawn according to established guidelines. It is a legislative determination that a breath sample withdrawn within two hours of the alleged offense will accurately reflect the alleged offender's alcohol content, by weight, in the withdrawn breath sample at the time of the alleged offense. Thus, the amount of alcohol concentration in the alleged offender's breath at the time of the alleged offense is shown by a chemical analysis of a sample of the alleged offender's breath which is withdrawn within two hours of the time of the alleged violation.

Absent clear statutory language requiring the need for expert testimony, it is our conclusion that expert testimony is not necessary to correlate intoxilyzer test results to the time of the alleged offense. See *People* v. *Kozar* (1974), 54 Mich. App. 503, 509, 221 N.W. 2d 170, 173. Recognizing that such correlation is necessary to the state's case, the legislature has provided for such a "relation back" by the clear and unambiguous language of R.C. 4511.19(B). Further, we cannot say as a matter of law that the time period which the legislature has set forth is either arbitrary or unreasonable. Our sister state of California has set forth *three hours* as its time period (Cal. Veh. Code Section 23152[b] [Supp. 1983]) and both the Alaska and Delaware Legislatures have determined *four hours* to be the time period within which a withdrawn breath sample will accurately reflect the amount of alcohol concentration in an alleged offender's breath. Alaska Stat. Section 28.35.030(a)(2) (Supp. 1983), see fn. 6; Del. Code Ann. Title 21, Section 4177 (Supp. 1982), see fn. 8.

Before ending, however, we would like to address one final point. The language of the statute seems to leave the decision of whether to admit the result of such a chemical test within the discretion of the trial court. This apparent conclusion is necessarily reached in light of the legislature's use of the word "may" in the phrase "the court may admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine * * *" R.C. 4511.19(B).

We realize that certain procedures must be met in administering the intoxilyzer test, and absent proper foundation evidence that these procedures had been met, the result of such a test may be in-

admissible. See fn. 1, *supra,* and cases cited therein. Once it is established that the chemical test was properly administered according to established guidelines, however, it is our opinion that the results of such a test, if offered for admission into evidence, must be admitted by the trial court. Accordingly, once proper foundation evidence is introduced and the intoxilyzer test result is offered into evidence, the word "may" is to be read as "shall."

In so holding, we recognize that:

"The statutory use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *, at least where there is nothing in the language or in the sense or policy of the provision to require an unusual interpretation * * *." (Citations omitted.) *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102, 107 [56 O.O.2d 58].

Ordinarily, in matters of statutory construction, the word "may" is construed as permissive. *Dorrian, supra,* at paragraph one of the syllabus. However, when necessary to serve the basic aim of a statute's construction and to arrive at and give effect to the intent of the General Assembly, it sometimes becomes necessary to provide the word "may" with a meaning which differs from that which is ordinary. *Id.* at 107. The test for determining when such a construction is necessary is that the intention of the General Assembly to have the word's meaning so construed must clearly appear from the statute itself, as where the manifest sense and intent of

the statute requires such a construction. *Id.* at 108.

When the manifest purpose of Ohio's new statute is considered together with the legislature's intent, it is undisputable that the "manifest sense and intent of the statute requires such construction." Accordingly, in prosecutions for alleged violations of R.C. 4511.19(A)(3), it is this court's holding that when the proper foundation evidence is introduced regarding an intoxilyzer test result, and the test result is then offered as evidence of the alleged offender's alcohol content at the time of the alleged offense, said test result *must be admitted into evidence.* Cf. Mich. Comp. Laws Ann. Section 257.625a(1) (Supp. 1983-84)[18]; Ala. Code Section 32-5A-194(a) (Supp. 1982).[19]

In summary, our decision today holds the following:

(1) The offense defined in R.C. 4511.19(A)(3), that no person shall operate a vehicle within the state with a concentration of .10 grams or more by weight of alcohol per two hundred ten liters of breath, is complete upon operating a vehicle within the state with the requisite prohibited alcohol concentration;

(2) R.C. 4511.19(A)(3) does not presume, but rather, defines what specific conduct is prohibited;

(3) Only two elements need be proved for the state to prevail in a prosecution of an alleged violation of R.C. 4511.19(A)(3); (a) operation of a vehicle within the state, and (b) at the time of the alleged offense, that the alleged offender possess the prohibited alcohol concentration level;

---

[18] Mich. Comp. Laws Ann. Section 257.625a(1) (Supp. 1983-84) relevantly states:

"The amount of alcohol * * * in the driver's blood at the time alleged as shown by chemical analysis of the person's blood, urine, or breath *shall be admissible into evidence in a criminal prosecution * * *.*" (Emphasis added.)

[19] Ala. Code Section 32-5A-194(a) (Supp. 1982) materially provides:

"* * * evidence of the amount of alcohol * * * in a person's blood at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath or other bodily substance, *shall be admissible. * * *"*

(4) The legislature has not made the result of the intoxilyzer test an element of the offense;

(5) The intoxilyzer test result is an element of proof which should be given great weight;

(6) It is clear from the plain and unambiguous language of R.C. 4511.19 (B) that the level of alcohol concentration in one's breath at the time of the alleged offense is shown by chemical analysis of a breath sample taken within two hours of the time of the alleged violation;

(7) The gravamen of R.C. 4511.19 (A)(3) is the operation of a vehicle within this state after ingestion of a sufficient amount of alcohol to produce an intoxilyzer test result which evidences an alcohol concentration level proscribed by R.C. 4511.19(A) within two hours of the time that the alleged violation occurred;

(8) R.C. 4511.19(B) is a legislative determination that a breath sample which is withdrawn within two hours of the alleged offense will accurately reflect the alleged offender's alcohol content, by weight, in the withdrawn sample at the time of the alleged offense;

(9) Absent clear statutory language requiring the need for expert testimony, no expert testimony is needed to correlate an intoxilyzer test result to the time of the offense;

(10) Once the proper foundation evidence is introduced regarding an intoxilyzer test result, and the test result is then offered as evidence of the alleged offender's breath alcohol content at the time of the alleged violation, said test result shall be admitted.

Accordingly, appellant's assignment of error is found well-taken. After the state admitted into evidence the result of a properly administered intoxilyzer test which reflected that the alleged offender's breath alcohol content at the time of the alleged offense was equal to or greater than that level which R.C.

4511.19(A)(3) prohibits, reasonable minds most certainly may have reached different conclusions as to whether the state had proved beyond a reasonable doubt that appellee had operated a vehicle within the state with a breath alcohol concentration level equal to or greater than that level which is prohibited by R.C. 4511.19(A)(3). Based on the foregoing, a judgment of acquittal at the close of the state's case, where the evidence which the state had produced consisted of the properly administered intoxilyzer result, was improvident and improper.

*Judgment affirmed.*

DOUGLAS, J., concurs.

HANDWORK, J., concurs in judgment only.

DOUGLAS, J., I concur in the foregoing opinion. I do so, however, in what I perceive to be much more simple and direct terms, while acknowledging the scholarliness of the opinion.

A court may take judicial notice of adjudicative facts, *i.e.,* the facts of the case. Evid. R. 201(A). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Evid. R. 201(B). Pursuant to Evid. R. 201(C), a court may take judicial notice, whether requested to or not. Judicial notice may be taken at any stage of the proceeding. Evid. R. 201(F).

It was generally known within this jurisdiction in the year 1982 that the legislature of the state of Ohio was contemplating a new "Drunk Driving Law." Consideration was being given to a revised law because of the alarming number of traffic accidents and, particularly, fatalities that were occurring

and which involved drivers who had been drinking before or during the operation of a motor vehicle. The avowed purpose of the legislature was to make the law of Ohio tough on drivers who engaged in drinking and then proceeded to drive a motor vehicle, thereby subjecting citizens of this state to unreasonable and unfair risks of injury ,or loss of life. The intent of the legislature was unequivocal and perspicuous, and pursuant to the intention that legislature said, effective March 16, 1983, that:

"Sec. 4511.19 (A) No person shall operate any vehicle * * * within this state if any of the following apply:

"* * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

"* * *

"(B) In any criminal prosecution for a violation of this section * * * the court may admit evidence on the concentration of alcohol in the defendant's * * * breath * * * at the time of the alleged violation *as shown by* chemical analysis of the defendant's * * * breath * * * withdrawn within two hours of the time of such alleged violation." (Emphasis added.)

The statute further continues in subsection (B):

"If there was at the time bodily substance was withdraw a concentration of * * * *less* than ten-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath * * * such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant." (Emphasis added.)

Thus it appears:

(1) That if the concentration is *less* than the proscribed amount, then that fact is to be considered in determining guilt or innocence;

(2) That the converse would also be true, to wit: if the concentration exceeds the proscribed amount (and the test had been properly administered) *as shown by* a test given within two hours of the alleged violation, that such occurrence becomes a *per se* violation of R.C. 4511.19(A)(3); and

(3) That pursuant to Evid. R. 402 the evidence of the test and its results would be admissible as "all relevant evidence is admissible * * *."

It would be hard to imagine how the legislature could have been more clear in carrying out its intent. If one drinks, drives, is stopped and tested within two hours and tests .10 or greater — he has violated the law. That, in my judgment, should be the ruling of this court to apply to all trial courts in this jurisdiction so there can be no question that it is *not* better to be apprehended in one locality rather than another if one is charged with a violation of R.C. 4511.19(A)(3).

On the question presented by the appellant through its assignment of error, I would find the assignment well-taken and reverse the judgment of the trial court as to its ruling on what is necessary to prove a violation of R.C. 4511.19(A)(3). Of course, this does not in any way affect the ruling of the trial court as to defendant Ulrich as any such consideration is prohibited by R.C. 2945.67 and the fact that defendant Ulrich has been once placed in jeopardy. See Section 10, Article I of the Constitution of Ohio.