597 So.2d 770 (1992)
Carl Andrew HAAS, Petitioner,
v.
STATE of Florida, Respondent.
No. 76767.
Supreme Court of Florida.
March 19, 1992.
Rehearing Denied May 28, 1992.
*771 James B. Gibson, Public Defender and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran, Asst. Deputy Atty. Gen., Tallahassee, for respondent.
GRIMES, Justice.
We review Haas v. State, 567 So.2d 966 (Fla. 5th DCA 1990), in which the court certified to be of great public importance the question of whether a blood-alcohol level test result must be related back to the time of the offense in order to convict of driving under the influence (DUI) in either an impairment or an unlawful blood-alcohol level (DUBAL) case.[1] We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Carl A. Haas was involved in a motor vehicle accident on State Road 50 in Orange County at about 10 p.m. on March 12, 1988. As a consequence, he was charged with DUI manslaughter (count I), vehicular homicide (count II), and DUI causing serious bodily injury (count III). Prior to the accident, Haas was driving at a normal speed and maintaining a single lane but on the wrong side of the divided four-lane highway. He was familiar with the area. He had driven nearly two miles and passed six median crossovers since entering State Road 50 on the wrong side before the accident occurred. At least one car approaching him had swerved to get out of the way and another had blown the horn to get Haas's attention. Without applying his brakes, Haas collided head-on with an automobile driven by Jennifer Trotter. Ms. Trotter was killed and her three-year-old son was injured.
Haas was combative at the scene of the accident and smelled of alcohol. Three cold cans of beer with one open can were found in a six-pack in Haas's truck. Two empty beer cans were found outside the truck.
*772 Over Haas's objection, a toxicologist testified that a blood sample taken from Haas about one hour and twenty minutes following the accident contained a blood-alcohol level of 0.11 percent. However, she said she could not testify that Haas's blood-alcohol level was in excess of 0.10 percent at the time he was driving. Haas's motion for judgment of acquittal on each count was denied.
With respect to the charges under counts I and III, the jury was given a special verdict in which it was asked to determine three questions: (1) whether Haas was under the influence of alcoholic beverages to the extent that his normal faculties were impaired; (2) whether Haas had a blood-alcohol level of 0.10 percent or higher at the time he was driving; or (3) whether Haas was not guilty. On these counts the jury found Haas guilty of driving with a blood-alcohol level of 0.10 percent or higher at the time he was driving and made no determination of the other alternatives. Because Haas was also convicted of count II, judgments of guilt were entered against him on all three counts.
The issue on appeal was whether the court erred in not granting Haas's motion for judgment of acquittal of counts I and III because there was no direct evidence to establish his blood-alcohol level at the time of the accident. The district court of appeal held that under Florida's statutory scheme, the evidence of the blood-alcohol reading constituted circumstantial evidence which was sufficient to uphold the convictions predicated on driving with a blood-alcohol level in excess of 0.10 percent.
In Miller v. State, 597 So.2d 767 (Fla. 1991), this Court recently held that an expert witness could testify concerning the results of the defendant's blood-alcohol level test even though the witness was unable to state what the blood-alcohol level was at the time the defendant was operating the vehicle. We reasoned that because the test was conducted within a reasonable period of time following the incident in question, the probative value of its results outweighed the potential for prejudice or confusion. However, our opinion in Miller did not decide the question of whether the admission of the test results was sufficient either by itself or in conjunction with other evidence to sustain a conviction in a DUBAL case.
Haas argues that based on scientific principles, it cannot be certain that his blood-alcohol level at the time he was driving was the same as it was when he was tested. The premise of his argument is that a person's blood-alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. See 2 Donald H. Nichols, Drinking/Driving Litigation § 23:03 (1985). Therefore, if a driver ingested alcohol shortly before he was arrested, it is at least possible that his blood-alcohol level might not yet have reached the prohibited level even though it registered above that level when tested some time thereafter. Thus, Haas contends that even if the results of the test were properly admitted, it cannot be the basis for convicting him under the DUBAL alternative of the statute in the absence of expert testimony extrapolating the results of the test to the time at which he was driving.
Many states have addressed this issue in various contexts. In State v. Taylor, 132 N.H. 314, 566 A.2d 172 (1989), the court held that where the police obtain a blood-alcohol sample within a reasonable period of time after driving occurs, the results of the test may be admitted as prima facie evidence of intoxication without the necessity of extrapolation and that the jury may give the test results whatever weight it wishes. The court concluded that to require extrapolation would place an impossible burden upon the state because (1) evidence with respect to when and in what amounts the defendant consumed alcohol, which is necessary for extrapolation, would rarely be available; and (2) the rate of alcohol absorption varies considerably between individuals, and extrapolation evidence is also complicated by the amount of food consumed at the time the alcohol was ingested. The court reasoned that the legislature could not have intended to place such impossible roadblocks in the way of *773 drunk driving prosecutions. While the defendant was convicted under an impairment statute, the court pointed out that the same reasoning would apply in prosecutions under New Hampshire's DUBAL statute.
The Nebraska Supreme Court held that the results of a valid breath test given within a reasonable time after the accused was stopped was probative of a violation of a statute containing a DUBAL alternative much like Florida's statutory scheme. State v. Kubik, 235 Neb. 612, 456 N.W.2d 487 (1990). The court stated that "matters of delay between driving and testing are properly viewed as going to the weight of the breath test results," and that extrapolation was unnecessary. Id. 456 N.W.2d at 501. Idaho appears to take a similar view. See State v. Knoll, 110 Idaho 678, 718 P.2d 589 (Idaho Ct.App.), review denied, 116 Idaho 466, 776 P.2d 828 (Idaho 1986).
In State v. Ulrich, 17 Ohio App.3d 182, 478 N.E.2d 812 (1984), the court held that the results of an intoxilyzer test which demonstrated that the defendant's blood-alcohol level was above the prohibited level was sufficient to convict of driving with a blood-alcohol level in excess of 0.10 percent without the necessity of extrapolation. Referring to a statute which permitted the introduction of the results of tests taken within two hours of the alleged violation, the court stated:
It is clear from the presence of this express language that the legislature intended the results of an intoxilyzer test to be admitted as evidence of the defendant's concentration of alcohol in his breath at the time of the defendant's alleged violation, provided that the intoxilyzer test was administered according to R.C. 4511.19(B). Accordingly, the gravamen of the offense (R.C. 4511.19[A][3]) is the operation of a vehicle within the state after ingestion of a sufficient amount of alcohol to produce an intoxilyzer test result which evidences an alcohol concentration level proscribed by statute within two hours of the time that the alleged offense occurred.
Ulrich, 478 N.E.2d at 821.
Employing a similar analysis, the court in State v. Wetzel, 7 Haw. App. 532, 782 P.2d 891 (1989), upheld a conviction under Hawaii's DUBAL statute based solely upon the results of a blood-alcohol test introduced without extrapolation. The test results create a permissible inference that the accused driver had the same blood-alcohol level when he was stopped.
In Ransford v. District of Columbia, 583 A.2d 186 (D.C. 1990), the court held that evidence of a blood-alcohol test administered within a reasonable time after the operation of the vehicle was sufficient, without more, to establish a conviction under the DUBAL statute of the District of Columbia. Analyzing legislative history, the court concluded that Congress could not have intended to require the onerous burden of extrapolating the test results.
In Davis v. Commonwealth, 8 Va. App. 291, 381 S.E.2d 11 (1989), the court recognized that by its literal terms, Virginia's DUBAL statute did not prohibit driving after consuming sufficient alcohol to register a blood-alcohol level in excess of 0.10 percent as indicated by a subsequently administered test. Notwithstanding, the court held that because the blood-alcohol concentration reflected by the test necessarily resulted from alcohol consumed prior to or during driving, the test results were presumptive evidence of the blood-alcohol concentration at the time of the driving without the necessity of extrapolation. The court stated that unless rebutted, the test results were sufficient to establish the blood-alcohol concentration at the time of the driving.
The New Jersey Supreme Court construed its DUBAL statute to proscribe an offense "that is demonstrated solely by a reliable breathalyzer test administered within a reasonable period of time after the defendant is stopped for drunk driving, which test results in the proscribed blood-alcohol level." State v. Tischio, 107 N.J. 504, 527 A.2d 388, 397 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). Rejecting the contention that extrapolation was necessary to exclude the possibility that the defendant's *774 blood-alcohol level had not yet reached the prohibited level at the time he was driving, the court said that "`[t]he law was not intended to encourage a perilous race to reach one's destination, whether it be home or the next bar, before the blood alcohol concentration reaches the prohibited level.'" Id. 527 A.2d at 396 (quoting State v. Tischio, 208 N.J. Super. 343, 506 A.2d 14, 16 (1986)). The New Jersey court held that extrapolation evidence was inadmissible.
Several states have held that the introduction of blood-alcohol level tests without extrapolation are sufficient along with other evidence of the defendant's driving to convict of driving with a blood-alcohol level in excess of a prescribed limit. People v. Kappas, 120 Ill. App.3d 123, 76 Ill.Dec. 1, 458 N.E.2d 140 (1983); Sullivan v. State, 517 N.E.2d 1251 (Ind. Ct. App. 1988); People v. Mertz, 68 N.Y.2d 136, 497 N.E.2d 657, 506 N.Y.S.2d 290 (1986); Commonwealth v. Slingerland, 358 Pa.Super. 531, 518 A.2d 266 (1986); State v. Keller, 36 Wash. App. 110, 672 P.2d 412 (1983). In these cases, the courts did not address the question of whether the results of the test standing alone would be sufficient to convict. Other states have held that the test results may be considered as prima facie evidence that the blood-alcohol level was the same at the time of the driving in a DUI (impairment) prosecution but have not spoken on the subject in a DUBAL case. Doyle v. State, 633 P.2d 306, 309 (Alaska Ct. App. 1981); Mosley v. State, 185 Ga. App. 610, 365 S.E.2d 451 (1988).
A Minnesota statute specifically addresses the question by providing that the result of a test administered within two hours of the alleged violation is deemed to be the alcohol concentration at the time of the violation. Minn. Stat. § 169.121 subd. 2 (1990). Likewise, a California statutory scheme provides that the result of a chemical test taken within three hours of driving which indicates an unlawful blood-alcohol level creates a rebuttable presumption that an unlawful blood-alcohol level was present at the time of the offense. Cal.Veh.Code § 23152(b) (West 1985).
On the other hand, a minority of jurisdictions having similar DUBAL statutes require the extrapolation of the blood-alcohol level test results back to the time of the operation of the vehicle in order to convict. Desmond v. Superior Court, 161 Ariz. 522, 779 P.2d 1261 (1989); State v. Ladwig, 434 N.W.2d 594 (S.D. 1989); State v. Rollins, 141 Vt. 105, 444 A.2d 884 (1982). While there is some theoretical logic in the rationale of these opinions, we prefer the majority view.
In a case involving DUI by impairment, section 316.1934, Florida Statutes (1989), provides that 0.10 percent or more by weight of alcohol in the blood shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. This statute is inapplicable to a DUBAL case because the crime itself consists of driving with a blood-alcohol level of 0.10 percent or more. It is clear, however, that in both impairment and DUBAL cases, the legislature contemplated that the results of the blood-alcohol test would be admissible in evidence. Moreover, the legislature obviously knew that the blood-alcohol test could not be conducted while the accused person was driving. In attempting to combat the scourge of drunk driving, we do not believe the legislature intended to place upon the State the difficult and often impossible burden of extrapolation as a condition precedent to conviction under the DUBAL statute. Though our statute is not as specific as that of Minnesota or California, we interpret Florida's statutory scheme to mean that the test results shall be prima facie evidence that the accused had the same blood-alcohol level at the time of his operation of the vehicle. Properly obtained test results which reflect a blood-alcohol level of 0.10 or more, standing alone, constitute circumstantial evidence upon which the finder of fact may (but is not required to) convict the accused driver of DUI either by impairment or DUBAL. However, contrary to the New Jersey position, we do not view the test results as conclusive. The accused is at liberty to seek to demonstrate through cross-examination or the introduction of other evidence *775 that the test results do not accurately reflect his or her blood-alcohol level at the time the vehicle was being operated.
We answer the certified question in the negative and approve the opinion of the court below.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I believe a valid question of fact existed as to whether this defendant was guilty of vehicular homicide. His conduct in driving a car on the wrong side of the highway and ignoring oncoming traffic that attempted to signal him is sufficient to establish reckless conduct beyond a reasonable doubt. Accordingly, I have no quarrel with the majority opinion to the extent it affirms Haas' vehicular homicide conviction. I depart from the majority as to the convictions for DUBAL manslaughter and DUBAL with serious bodily injury.
In this case, the jury specifically found that Haas had committed these last two offenses based on their finding that his blood-alcohol level was .10 percent or higher at the time of the accident. Yet, I find nothing in the record establishing this crucial element of the offense beyond a reasonable doubt. All we know with certainty is that his blood alcohol was .11 about one hour and twenty minutes after the accident had occurred. The expert toxicologist testified that she could not establish what Haas' blood-alcohol level was at the time the offense allegedly was committed. Under well-established scientific principles, it may have been higher, but it also may have been lower.
As the toxicologist noted in her testimony, the answer to this particular question depends entirely on when the first and last drinks had been consumed. If the defendant had only recently been drinking, blood-alcohol level initially will be low but will rise as time passes. This is because alcohol is not absorbed into the blood stream immediately upon being drunk, especially if the defendant has recently eaten a meal. If the defendant had been drinking for quite some time or had stopped drinking hours earlier, blood alcohol is likely to have reached a peak and begun to decline.
In the present case, nothing in the record establishes exactly when Haas began drinking and when he had consumed his last drink. If anything, the physical evidence at the scene of the accident strongly suggests that Haas had been drinking beer while driving his truck, thus creating a reasonable possibility that his blood-alcohol level was not .10 percent or higher at the time of the accident. In other words, Haas' blood alcohol might have risen above .10 only after the accident, during the hour and twenty minutes that elapsed before blood was drawn for a test. To my mind, there thus was reasonable doubt as to whether Haas committed any DUBAL offense. Because the jury rejected the State's alternative theory of simple impairment, these two convictions thus should not stand.
Today, the majority effectively creates a presumption that a person's blood-alcohol level is the same several hours after the fact as it was when an alleged DUBAL offense occurred. Yet, all available scientific and medical evidence is directly to the contrary. Thus, under the majority's analysis, the State is being relieved of its burden of proving beyond a reasonable doubt the element of driving with an unlawful blood-alcohol level. This apparently is so even if an expert testifies that reasonable doubt existed as to the defendant's blood alcohol at the time in question. In essence, the majority says that any record support for DUBAL is sufficient to sustain a conviction, even if a reasonable doubt has not been eliminated by the State.
This conclusion is contrary to the most basic conception of due process embodied in both article I, section 9 of the Florida Constitution and the Fourteenth Amendment *776 of the federal Constitution. One of the most fundamental components of due process is the requirement that the state must prove criminal guilt beyond a reasonable doubt. In the context of DUBAL cases, the majority opinion simply eliminates this centuries-old requirement of Anglo-American law, and it does so for no rationale I can discern other than simple expedience. Accordingly, I dissent in part and would remand this case to the trial court with instructions to vacate the DUBAL convictions and sentences.
BARKETT, J., concurs.
NOTES
[1] Section 316.193(1), Florida Statutes (1989), provides:

(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired; or
(b) The person has a blood alcohol level of 0.10 percent or higher.
Thus, the offense may be proven in either of two ways. State v. Rolle, 560 So.2d 1154 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990).