CITY OF OREGON, APPELLEE, *v.*
LEMONS, APPELLANT.

(No. L-83-336—Decided March 9, 1984.)

*Mr. Thomas A. Dugan,* prosecuting attorney, for appellee.

*Mr. Jeffrey I. Goldstein,* for appellant.

RESNICK, J. This is an appeal from the Oregon Municipal Court. Appellant, Denny Lemons, was arrested, tried, convicted, and sentenced accordingly for violating Oregon Municipal Code (OMC) Section 333.01(a)(3). This section of the OMC provides in relevant part:

"(a) Operation. No persons shall operate any vehicle within the municipality if any of the following apply:
"* * *

"(3) The person has a concentration of ten-hundredths (0.10) of one gram or more by weight of alcohol per 210 liters of his breath; * * *"

Section (a)(3) of the foregoing ordinance is identical in content with R.C. 4511.19(A)(3). Appellant urges this court to set aside his conviction on the basis that OMC Section 333.01(a)(3) is unconstitutionally vague and uncertain. As his sole assignment of error, appellant asserts:

"Whether the trial court erred by failing to find the driving under the influence of alcohol sections of the Ohio Revised Code and the Oregon, Ohio Municipal Code unconstitutional in that they are vague and uncertain."

Although in his assignment of error appellant asserts that certain sections of both the Ohio Revised Code and Oregon Municipal Code are vague and uncertain and, therefore, necessarily unconstitutional, a review of the record indicates that: (1) appellant was arrested for and charged with violating only the OMC, (2) appellant was found guilty of violating only the OMC, and (3) appellant was sentenced for violating only the OMC. Accordingly, appellant is without standing in the instant appeal to challenge the constitutionality of certain sections of the Ohio Revised Code, see *Niles* v. *Dean* (1971), 25 Ohio St. 2d 284, 288 [54 O.O.2d 394]; *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53 [42 O.O.2d 100]; see, generally, 16 Ohio Jurisprudence 3d (1979), Constitutional Law, Sections 134-135, as appellant has not sustained injury by their enforcement. *State, ex rel. Lieux,* v. *Westlake* (1951), 154 Ohio St. 412, 418 [43 O.O. 343].

Thus, the focus of our analysis will address only OMC Section 333.01(a)(3).

We begin by reaffirming the principle that statutes are presumed to be constitutional. *Monroeville* v. *Ward* (1971), 27 Ohio St. 2d 179, 182 [56 O.O.2d 110], reversed on other grounds (1972), 409 U.S. 57; *State, ex rel. Dickman*, v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134], paragraph one of syllabus. This presumption, which cloaks statutes, is also applicable to "every act of a legally constituted body," *Miamisburg* v. *Clayman* (App. 1941), 34 Ohio Law Abs. 263, 265, and specifically, a municipal ordinance, *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437. Thus, "[i]t is firmly established that legislative enactments, whether of a municipality or state, have a strong presumption of constitutionality." *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377 [15 O.O.3d 450]. For discussion of this principle, see *State, ex rel. Swetland*, v. *Kinney* (1982), 69 Ohio St. 2d 567, 574-576 [23 O.O.3d 479]. If possible, legislation must be construed to uphold its constitutionality and all doubts are to be resolved in favor of upholding the statute. *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 101 [72 O.O.2d 54]. Appellant, in order to prevail on his contention that OMC Section 333.01(a)(3) is unconstitutionally vague and uncertain, must demonstrate that this section of the OMC is "clearly unconstitutional beyond a reasonable doubt." *Dickman, supra,* at 147.

Just as certain as is the presumption in favor of an ordinance's constitutionality, is the fact that legislative enactments may be declared to be inoperative and void for uncertainty of meaning. *Chicone* v. *Liquor Control Comm.* (1969), 20 Ohio App. 2d 43, 45 [49 O.O.2d 64]. The due process requirement of definiteness is violated by a statute that:

"[F]ails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss* (1954), 347 U.S. 612, 617, cited in *Toledo* v. *Kerr* (June 18, 1982), Lucas App. No. L-82-040, unreported.

All that is required is that the statute in question "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States* v. *Petrillo* (1947), 332 U.S. 1, 8. The "vagueness doctrine," whose root is a rough idea of fairness, "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten* v. *Kentucky* (1972), 407 U.S. 104, 110.

See, also, *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 108 ("Vague laws may trap the innocent by not providing fair warning.").

The concept of "void for vagueness" promotes fairness in two respects: first, it insures that a defendant will receive adequate warning of what the law requires; second, it prevents arbitrary and discriminatory enforcement by requiring distinct guidelines for police, judges, and juries to fairly administer the law. *People* v. *Cruz* (1979), 48 N.Y. 2d 419, 424, 423 N.Y.Supp. 2d 625, 627. See, generally, Note, The Void-For-Vagueness Doctrine in the Supreme Court (1960), 109 U. Pa. L. Rev. 67.

In support of his argument, appellant has submitted to this court various municipal court opinions which address R.C. 4511.19(A)(3),[1] and the re-

---

[1] R.C. 4511.19(A)(3) and OMC Section 333.01(a)(3) are nearly identical in wording, and appellant argues that the reasoning of the municipal courts which held that the

cent and highly publicized California case of *People* v. *Alfaro* (June 2, 1983), Cal. App., unreported, which addresses a similar provision of the California Vehicle Code. The various courts in these cases have concluded that the relevant statutory provisions addressed therein, which are similar to OMC Section 333.01(a)(3), are unconstitutionally vague. Without a lengthy discussion, let it suffice to simply state that we vigorously reject the reasoning of those courts which have so decided.

Rather, we are persuaded by the reasoning of the Utah and Florida Supreme Courts in *Greaves* v. *State* (Utah 1974), 528 P. 2d 805, and *Roberts* v. *State* (Fla. 1976), 329 So. 2d 296, in which each court held that statutory provisions similar to OMC Section 333.01(a)(3) were not unconstitutionally vague.

The first of these two cases is *Greaves, supra,* wherein the Utah Supreme Court addressed the vagueness argument concerning a statute which prohibits any person to drive or be in actual physical control of any vehicle within the state of Utah if that person has a blood alcohol content of .10 percent or greater, by weight. *Greaves, supra,* at 806. In holding the statute constitutional, the *Greaves* court addressed the vagueness argument and stated at 807, 808:

"[T]he presumption of validity hereinabove stated, gives rise to the rule that a statute will not be declared unconstitutional for that reason [*i.e.,* vagueness] if under any sensible interpretation of its language it can be given practical effect. The requirement is that it must be sufficiently clear and definite to inform persons of ordinary intelligence what their conduct must be to conform to its [the statute's] requirements and to advise one accused of violating it what constitutes the offense

with which he is charged. This statute states with sufficient clarity and conciseness the two elements necessary to constitute its violation. They are (1) a blood alcohol concentration of .10 per cent, and (2) concurrent operation or actual physical control of any vehicle. We can see no reason why a person of ordinary intelligence would have any difficulty in understanding that if he has drunk anything containing alcohol, and particularly any substantial amount thereof, he should not attempt to drive or take control of a motor vehicle."

This analysis was then subsequently adopted by the Florida Supreme Court in *Roberts, supra,* at 297. Although the ordinance in question does not totally prohibit a person from drinking and driving (see *State* v. *Taylor* [1981], 3 Ohio App. 3d 197, 198, "For better or worse, the law prohibits *drunken* driving, not driving after a drink."), OMC Section 333.01(a)(3) makes it perfectly clear that the two activities of drinking and driving cannot be mixed to the extent that the driver has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. See, also, concurring opinion of Handwork, J., *infra,* at fn. 3. Charts are available through various sources, including the State Liquor Control Department, showing the number of drinks necessary to produce the reading. Cf. *State* v. *Franco* (Wash. 1982), 96 Wash. 2d 816, 828-829, 639 P. 2d 1320, 1324.

"The carnage caused by drunk drivers is well documented and needs no detailed recitation here." *South Dakota* v. *Neville* (1983), 459 U.S. 553, 558. "The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield." *Breithaupt* v. *Abram* (1957), 352 U.S. 432, 439, cited in *Haas* v. *State* (1982), 7

---

statute was vague is analogous to that reasoning which should be utilized by this court in analyzing the applicable sections of the Oregon Municipal Code.

Ohio App. 3d 139, 140. "The frightful carnage * * * [drunk driving] spews upon our highways," *Tate* v. *Short* (1971), 401 U.S. 395, 401 (Blackmun, J., concurring), is exceeded only by the death toll of all our wars. *Perez* v. *Campbell* (1971), 402 U.S. 637, 657, 672 (Blackmun, J., concurring).

The Oregon City Council has followed the lead of our General Assembly in its increasing efforts to protect the innocent users of our streets and highways from the hazard of vehicles under the control of those irresponsible persons who insist on driving after drinking. See *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, 145 [38 O.O.2d 366]; *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346, 348 [69 O.O.2d 312]; *State* v. *Ulrich* (1984), 17 Ohio App. 3d 182; *State* v. *Kivell* (1983), 11 Ohio App. 3d 12.

The ordinance in question defines what conduct is specifically prohibited, *i.e.,* operating a vehicle within the municipality of Oregon with a concentration of ten-hundredths of one gram or more, by weight, per two hundred ten liters of breath. This legislative proscription by the Oregon City Council is a recognition of and agreement with numerous studies and statistics which conclude that a concentration of alcohol at or beyond the proscribed level has sufficient adverse effect upon any person to make that person's driving a definite hazard to that person as well as others. *Ulrich, supra; Coxe* v. *State* (Del. 1971), 281 A. 2d 606, 607.

Appellant has failed to demonstrate that OMC Section 333.01(a)(3) is "clearly unconstitutional beyond a reasonable doubt." *Dickman, supra.* We hold that OMC Section 333.01(a)(3) is sufficiently clear and definite to inform persons of ordinary intelligence what their conduct must be to conform to the ordinance's requirements and to advise a person

who is accused of violating the ordinance what constitutes the offense with which he is charged. This holding is consistent with recent Supreme Court decisions in Arizona and California, wherein those courts specifically held that similar statutes were not unconstitutionally vague. See *Burg* v. *Municipal Court* (1983), 35 Cal. 3d 257, 198 Cal. Rptr. 145, 673 P. 2d 733; *Fuenning* v. *Superior Court* (Ariz. 1983), 680 P. 2d 121. Appellant's sole assignment of error is, therefore, found not well-taken.

The judgment of the Oregon Municipal Court is hereby affirmed.

*Judgment affirmed.*

CONNORS, P.J., concurs.

HANDWORK, J., concurs in judgment only.

HANDWORK, J., concurring. I concur in the court's judgment affirming the trial court. I write separately to emphasize points not reached by the majority's opinion, but which still need to be addressed.

The majority holds that:

"* * * [Oregon Municipal Code Section] 333.01(a)(3) is sufficiently clear and definite to inform persons of ordinary intelligence what their conduct must be to conform to the ordinance's requirements and to advise a person who is accused of violating the ordinance what constitutes the offense with which he is charged."

At first blush, however, this holding appears to beg the question. Appellant argues that the ordinance in question is "void for vagueness," and, therefore, that it violates the Due Process Clause of the Fourteenth Amendment, because it prohibits by scientific measurement (and thereby renders unlawful) certain conduct of which the average person will

never have "fair warning."[2] In this case, how did appellant "know" that his blood-alcohol concentration (B.A.C.) had exceeded ten-hundredths of one percent (.10 percent) by weight? Stated more generally, how does the ordinary person of average intelligence "know" when the alcohol level in his blood stream equals or exceeds the limit permitted by law? The answer is: such a person does not know. Thus, I would concede the obvious intuitive point that appellant's argument makes. Yet, one need not dwell on the complex epistemological problems generated by the issue of whether Section 333.01(a)(3) affords a person "fair notice" of when his otherwise lawful conduct becomes unlawful. The precise physiological measurement of alcohol in a particular person's bloodstream, at any particular place and time, is so relative and so subject to variation that it cannot possibly be the kind of "common knowledge" to which the law ordinarily holds a reasonable person of average intelligence. Suffice it to say, that at this stage in man's evolution, introspective knowledge of a particular physiological condition (*e.g.*, one's B.A.C. level), without the aid of a scientific test, is far beyond the capacity of ordinary people. An individual may indeed suspect that he has had "too much" to drink, but suspicion, conjecture and speculation do not constitute "knowledge" in any epistemological sense, and "guess-estimates" are usually insufficient to satisfy due process requirements or escape the constitutional vice of punishment without fair warning of that which is punishable.

Yet, in my opinion, it is irrelevant in the present contest whether or not appellant could ever "know" that his contemplated conduct became criminal after his B.A.C. level reached or surpassed .10 percent. The reason for this lies in the purpose behind our laws against driving while intoxicated. The driving public, generally, is well-aware of Ohio's law against "drunk driving." While the driving public may not sufficiently appreciate the great pains lawyers (judges, prosecutors and defense attorneys) take to differentiate the popular conception of "drunk" from the strict legal meaning of "intoxicated" or "under the influence," the public is, nevertheless, sufficiently cognizant of the fact that driving a vehicle under that condition (regardless of the label) is conduct the law regards as criminal. Given the public's general awareness that "drunk driving" is prohibited, the law then squarely offers the driving public what is, in effect, a conditional choice in exchange for the implicit assurance that driving a vehicle is presumptively lawful: If you wish to drive on a public highway in Ohio, then, before doing so, either drink nothing at all or drink very little.[3] The onus thereby placed upon the driver is one of caution — since, if the driver chooses to imbibe at all, he must refrain from anything more than a minimal intake to have any reasonable probability of avoiding illegality. Stated somewhat differently, the law imposes

---

[2] I would observe that the ordinance in question enjoys a presumption of constitutionality, see *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, and the rote assertion that the statute is "void for vagueness" does not, standing alone, rebut that presumption.

...

[3] The law does not say, "It is illegal to drink immoderately and then drive," because the law does not regard any consumption of alcohol as excessive or "immoderate" until the driver's B.A.C. level achieves (or surpasses) what the statute proscribes — .10 percent, which brings us back to the original question posed by appellant. Thus, the defense attorney's old bromide, that "It is not illegal to drink and drive in Ohio," has a ring of truth to it.

on the driver a calculated modification of his behavior, such that he might be reasonably certain of remaining within the bounds of the law (*i.e.,* that he might be reasonably certain of having a B.A.C. level well below .10 percent).

The law thus exhibits its most commendable influence, which is *deterrence,* for it allocates the burden of curbing alcohol consumption *to the person best able to control it:* the drinking driver. This deterrent feature is quite obviously a boon to public safety.

Similar views recently expressed by the Arizona and California Supreme Courts support my position here. In *Fuenning* v. *Superior Court* (Ariz. 1983), 680 P. 2d 121, the Arizona Supreme Court stated, at 129:

"Pragmatically, there may be no way for a particular drinker to know the precise moment he reaches the physiologic point at which driving or controlling a vehicle will violate the law. We take notice, however, that it requires more than a small amount of alcohol to produce a .10% [blood-alcohol concentration] BAC. Those who drink a substantial amount of alcohol within a relatively short period of time are given clear warning that to avoid possible criminal behavior they must refrain from driving.

"While the driver may not be able to determine that his BAC is .10 %, rather than .099%, such precision is not required to prevent the statute from being declared vague. Due process requires neither perfect notice, absolute precision nor impossible standards. It requires only that the language of the statute convey a definite warning of the proscribed conduct. * * * Where a statute gives fair notice of what is to be avoided or punished, it should not be declared void for vagueness simply because it may be difficult for the public to determine how far they can go before they are in actual violation. * * *"

In *Burg* v. *Municipal Court* (1983),

35 Cal. 3d 257, 198 Cal. Rptr. 145, 673 P. 2d 733, the California Supreme Court elaborated:

"Turning now to the 'fair notice' component of the void-for-vagueness doctrine, we observe that the real thrust of the defendant's argument is that the statute is in effect 'void for preciseness.' His complaint is not that the language of the statute is vague or ambiguous, but that it is too exact. His novel theory is that the statute fails to notify potential violators of the condition it proscribes because it is impossible for a person to determine by means of his senses whether his blood-alcohol is a 'legal' 0.09 percent or an 'illegal' 0.10 percent. The latter observation is probably true as a matter of fact, but it does not affect the constitutionality of the statute.

*"Defendant's theory would render the void-for-vagueness doctrine internally inconsistent: the notice requirement would compete with the need to provide precise standards for law enforcement. When, as in the present case, a statutory standard requires scientific measurement, the very factor that assures due process under the 'standards' component would violate due process under the 'notice' component."* (Emphasis added.) 198 Cal. Rptr. at 152-153, 673 P. 2d at 740.

As the California Supreme Court noted, the argument that the California statute (or, in this case, the Oregon ordinance) is void for "vagueness" because it is *too precise* (*i.e.,* because it specifies a B.A.C. level of .10 percent) must fail, because it contradicts the first essential of the very doctrine on which the argument is based. The "void for vagueness" doctrine means that criminal statutes must be *clearly* and *precisely* drawn, which is the case here. Thus, while it is true that a person who drives may very well not know when (or at what point) his B.A.C. level reaches .10 percent (and, therefore, when his driving crosses the line separating

lawful from unlawful conduct), or when he is "drunk," as the public conventionally uses that term, *the primary responsibility for avoiding that condition rests with himself.* In this respect, the law's stringent proscription stands as a credible deterrent to those drivers who would recklessly intoxicate themselves, thereby endangering innocent members of the travelling public. Indeed, the law's very stringency constitutes "fair warning" to the would-be intoxicated driver that *prudence when drinking* is the better course of conduct. Accordingly, I conclude that the prohibition set forth in Oregon Municipal Code Section 333.01(a)(3) is reasonably consonant with the Due Process Clause of the Fourteenth Amendment.