OPINION
{¶ 1} Defendant-appellant, Misty Cole, appeals her conviction in the Warren County Court of Common Pleas for aggravated drug trafficking. We affirm appellant's conviction.
 {¶ 2} In June 2003, appellant was indicted on one count of aggravated drug trafficking and two counts of drug trafficking, all counts being violations of R.C. 2925.03(A)(1). In count one of the indictment, the state alleged that appellant knowingly sold or offered to sell an amount of Oxycontin equal to or exceeding the bulk amount, but less than five times the bulk amount. That count was a third-degree felony. A bill of particulars later indicated that the sale was of nine, 80-milligram tablets of Oxycontin. The state alleged in counts two and three of the indictment that appellant knowingly sold or offered to sell cocaine. Those counts were also thirddegree felonies. Appellant pled "not guilty" to all counts.
 {¶ 3} Pursuant to R.C. 2925.01(D)(1)(d), the "bulk amount" of a Schedule II drug such as Oxycontin is "five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual[.]" Appellant, who is indigent, moved for the appointment of an expert to establish what constituted the "maximum daily dose" of Oxycontin. The court initially granted appellant's motion, setting a maximum reimbursement amount of $500. However, the court later reconsidered its decision and denied appellant's motion. The court found that expert testimony was not necessary and that the "maximum daily dose" could be established with a standard pharmaceutical reference manual. The court required the state to establish which reference manual it was relying on for the "maximum daily dose" amount.
 {¶ 4} Citing a manual entitled, "United States Pharmacopoeia Dispensing Information," the common pleas court determined in a November 24, 2003 entry that the "maximum daily dose" of Oxycontin was 80 milligrams. The court stated in the entry that it would instruct the jury accordingly. The same day, appellant changed her plea from "not guilty" to "no contest" to all three counts. The court convicted appellant of all three counts in the indictment.
 {¶ 5} In January 2004, the common pleas court sentenced appellant to one year in prison for count one, and three years each for counts two and three. The court ordered the sentences to be served concurrently. Appellant now appeals her conviction on count one, assigning three errors.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The trial court committed prejudicial error in failing to find that O.R.C. 2925.03(D)(1)(d), The Statute Defining "Bulk Amount" of Oxycontin, was void for Vagueness."
 {¶ 8} In this assignment of error, appellant argues that R.C.2925.03(D)(1)(d) is unconstitutionally vague. Specifically, appellant argues that the statute is not sufficiently clear as to what constitutes the "maximum daily dose" of Oxycontin.
 {¶ 9} All legislative enactments enjoy a strong presumption of constitutionality. State v. Collier (1991), 62 Ohio St.3d 267, 269. The party alleging that a statute is unconstitutional must prove that assertion beyond a reasonable doubt in order to prevail. Id. When a statute is alleged to be void for vagueness, all doubts should be resolved in favor of the constitutionality of the statute. City of Oregonv. Lemons (1984), 17 Ohio App.3d 195, 196.
 {¶ 10} It is a basic principle of due process that an enactment's prohibitions must be clearly defined. State v. Phipps (1979),58 Ohio St.2d 271, 273. "In order to survive a voidfor-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement." State v. Williams, 88 Ohio St.3d 513, 532,2000-Ohio-428, citing Chicago v. Morales (1999), 527 U.S. 41, 56-57,119 S.Ct. 1849. Mathematical certainty is not required — the test is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals
(1992), 63 Ohio St.3d 354, 358.
 {¶ 11} R.C. 2925.03(A) defines the crime of drug trafficking, stating that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." R.C. 2925.03(C)(1) states that if the controlled substance involved is a "Schedule I" or "Schedule II" drug other than marihuana, cocaine, L.S.D., heroin, and hashish, one who violates R.C.2925.03(A) is guilty of aggravated drug trafficking. Oxycontin is a form of Oxycodone, a "Schedule II" drug. See R.C. 3719.41.
 {¶ 12} Generally, aggravated drug trafficking is a fourth-degree felony. See R.C. 2925.03(C)(1)(a). However, R.C. 2925.03(C)(1)(c) states that aggravated drug trafficking is a third-degree felony if the amount involved equals or exceeds the "bulk amount" but is less than five times the "bulk amount."
 {¶ 13} R.C. 2925.01(D)(1)(d) defines "bulk amount" as follows: "An amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual[.]" R.C. 2925.01(M) defines "standard pharmaceutical reference manual" to include any of the following reference works:
 {¶ 14} "(1) `The National Formulary';
 {¶ 15} "(2) `The United States Pharmacopeia,' prepared by authority of the United States Pharmacopeial Convention, Inc.;
 {¶ 16} "(3) Other standard references that are approved by the state board of pharmacy."
 {¶ 17} Initially, we note that the statutory language in R.C. 2925.03(A) and (C) defining the crimes of drug trafficking and aggravated drug trafficking is clear and gives fair notice of the conduct prohibited. Appellant does not claim that the definitions of those crimes are vague or that she did not know her actions were prohibited. Rather, appellant's argument is that the section defining "bulk amount," which helps determine whether the crime of aggravated drug trafficking is a thirddegree or a fourth-degree felony, is unconstitutionally vague. Therefore, the issue is whether the General Assembly was sufficiently clear in setting forth when aggravated drug trafficking is a third-degree felony, based on the drug amount exceeding the bulk amount.
 {¶ 18} We find that R.C. 2925.01(D)(1)(d), the section defining "bulk amount," is not unconstitutionally vague. A person of common intelligence could determine what constitutes the "bulk amount" of Oxycontin, and therefore what amount makes aggravated trafficking in Oxycontin a third-degree felony rather than a fourth-degree felony. Pursuant to R.C.2925.01(D)(1)(d), the "bulk amount" is either: (1) 20 grams or, (2) "five times the maximum daily dose in the usual dose range as specified in a standard pharmaceutical reference manual[.]" R.C. 2925.01(M) specifies two such reference manuals. As we will discuss under appellant's third assignment of error, the "maximum daily dose" can be discerned by consulting one of the specified manuals, such as the "United States Pharmacopeia." We do not find that the statute's language is so vague as to violate appellant's due process rights.
 {¶ 19} Appellant notes that in State v. Brown, Preble App. No. CA2003-02-004, 2004-Ohio-424, the defendant was convicted of Oxycontin trafficking in the bulk amount based on expert testimony that the "maximum daily dose" for Oxycontin was 40 milligrams, not 80 milligrams as the court found in this case. This court affirmed the sufficiency of the evidence for the conviction. Appellant argues that the difference between the two "maximum daily dose" determinations is an indication of the vagueness of the statute and that it does not contain sufficient standards to prevent arbitrary enforcement.
 {¶ 20} Contrary to appellant's argument, we do not find that the above difference in "maximum daily dose" determinations is necessarily an indication of the vagueness of the statute's language. Our analysis must be confined to the statutory language itself. The language of R.C.2925.01(D)(1)(d) is clear as to how to arrive at the "maximum daily dose" amount. Based on R.C. 2925.03(A)(1), R.C. 2925.03(C)(1)(c), and R.C.2925.01(D)(1)(d), appellant was given sufficient notice that her conduct was prohibited, and of the potential punishment she could face. Accordingly, we overrule appellant's first assignment of error.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "The trial court abused its discretion in failing to appoint an expert to assist the trier of fact in determining the maximum daily dose of oxycontin in extended release form in the usual dose range specified in a standard pharmaceutical reference manual."
 {¶ 23} "Due process, as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." State v. Mason, 82 Ohio St.3d 144, 1998-Ohio-370, syllabus.
 {¶ 24} After reviewing the record, we cannot say that the common pleas court abused its discretion in denying appellant an expert. Appellant could not show the common pleas court that she would be denied a fair trial if not appointed an expert. In addition to denying appellant's motion for an expert, the court did not permit the state to offer expert testimony on the "maximum daily dose" issue. Rather than rely on expert testimony, the court determined the "maximum daily dose" by referring to the "United States Pharmacopeia," one of the standard reference manuals specified in R.C. 2925.01(M). As will be apparent from our analysis of appellant's third assignment of error, the court was capable of determining the "maximum daily dose" as a matter of law without the aid of an expert. We cannot say that the common pleas court's decision to rely on a reference manual, rather than expert testimony from either the defense or the state, denied appellant the opportunity for a fair trial.
 {¶ 25} Accordingly, because appellant cannot make the "particularized showing" discussed by the Ohio Supreme Court in Mason, we find no abuse of discretion by the common pleas court in failing to appoint an expert. We overrule appellant's second assignment of error.
 {¶ 26} Assignment of Error No. 3:
 {¶ 27} "The trial court abused its discretion in finding, as a matter of law, that the maximum daily dose of oxycontin in the usual dose range in extended release form is 80 milligrams."
 {¶ 28} In this assignment of error, appellant argues that the common pleas court erred in its determination of the "bulk amount." Specifically, appellant argues that the common pleas court's determination that 80 milligrams was the "maximum daily dose in the usual dose range" pursuant to R.C. 2925.01(D)(1)(d) was erroneous.
 {¶ 29} In making its determination of the "maximum daily dose in the usual dose range," the common pleas court relied on the "United States Pharmacopeia," a reference manual specified in R.C. 2925.01(M)(2). The manual does not explicitly state what the "maximum daily dose in the usual dose range" is for oxycodone extended-release tablets, the form of oxycodone appellant was convicted of selling. However, the manual states that the usual strengths available are 10, 20, 40, 80, and 160 milligrams. As to the 80 and 160-milligram doses, the manual notes that they should be used only by opioid-tolerant patients. The manual warns that, with respect to the 80 and 160-milligram doses, fatal respiratory depression may occur in patients who have not previously taken opioids. The manual further states that "dosage must be individualized by the physician according to the severity of pain and patient response," and that the usual adult dose should be administered once every 12 hours.
 {¶ 30} We find that the common pleas court's determination of the "maximum daily dose in the usual dose range" was not erroneous, and was a proper application of R.C. 2925.01(D)(1)(d). The 80 and 160-milligram doses are only to be taken by opioid-tolerant patients, and could be fatal to persons who have never taken opioids. Accordingly, those doses are not in the "usual dose range" within the meaning of R.C.2925.01(D)(1)(d). The other doses available range from ten to 40 milligrams. Using the top of that range, two, 40-milligram tablets taken once every twelve hours as suggested by the manual amounts to 80 milligrams per day. We find no error in the common pleas court's determination, as a matter of law, that 80 milligrams is the "maximum daily dose in the usual dose range."
 {¶ 31} Because the common pleas court properly determined the "maximum daily dose in the usual dose range," and thus the "bulk amount" of Oxycontin pursuant to R.C. 2925.01(D)(1)(d), we overrule appellant's third assignment of error.
Judgment affirmed.
Young, P.J., and Walsh, J., concur.