JOURNAL ENTRY and OPINION
{¶ 1} After a bench trial, defendant-appellant Andre Elliott was convicted of trafficking in a counterfeit controlled substance and two counts of drug trafficking.
 {¶ 2} Elliott presents three assignments of error in which he appeals only his convictions and sentences on counts two and three, i.e., for drug trafficking. He first argues that this court should stay this appeal due to the Ohio Supreme Court's pending decision upon accepting review of State v. Chandler,157 Ohio App.3d 672, 2004-Ohio-3436. Should this court decline to stay this case, Elliott further argues, based upon the appellate court's analysis in Chandler, that his convictions for drug trafficking in violation of R.C. 2925.03 are unsupported by either sufficient evidence or the weight of the evidence.
 {¶ 3} Upon a review of the record in conjunction with applicable legal authority, this court partly agrees with Elliott's arguments. Consequently, Elliott's conviction for drug trafficking on count three is affirmed, but his conviction on count two cannot be sustained as a third-degree felony. Therefore, his conviction on count two is modified to a felony of the fifth degree, and this case is remanded for resentencing in accordance with this opinion.
 {¶ 4} Elliott's convictions result from a "reverse sting" operation conducted by the Cleveland Police Department's Sixth District Vice Unit on the night of March 26, 2004. As described by Detective James Cudo during his testimony at Elliott's trial, Cudo simply drove an unmarked vehicle slowly in the area of East 156th Street and Corsica Avenue, an area known for drug activity, watching for someone to make a gesture indicating drugs were for sale.
 {¶ 5} At approximately 10:30 p.m., a man, whom Cudo later identified as Elliott, made such a gesture by giving him "the wave." Cudo nodded, pulled into a parking space, waited for Elliott to run to the vehicle, then rolled down the front passenger window.
 {¶ 6} Elliott leaned into the car to ask Cudo "what [he] wanted." Cudo responded, "a 20", referring to a $20 rock of crack cocaine." Elliott proceeded to "spit from his mouth a plastic bag which had [what] appeared to be one rock of crack cocaine into his hand and then handed it to" Cudo. The parties stipulated at trial that the substance of which the rock consisted, although it weighed.17 grams, was neither cocaine nor any other controlled substance. Cudo, in turn, handed Elliott a marked $20 bill.
 {¶ 7} As Cudo did so, he asked Elliott "if he could handle any weight." Elliott asked Cudo "how much," and Cudo responded, "a quarter ounce." Elliott indicated he could "get some" for "$200." Cudo later testified the "normal price" for a quarter ounce was between "two and $300, depend[ing] on * * * the quality * * *." Cudo told Elliott that he would test what Elliott had given him, then asked how he could find Elliott again for the larger sale. Elliott answered that "his name [was] Pimple, and that he would be walking up and down East 156th Street all night."
 {¶ 8} After Cudo drove away, Elliott was arrested by other officers who were taking part in the operation.
 {¶ 9} Elliott subsequently was indicted on three counts: 1) trafficking in a counterfeit controlled substance, R.C. 2925.37; 2) trafficking in crack cocaine in an amount between five and ten grams, R.C. 2925.03 (a third-degree felony); and, 3) trafficking in crack cocaine in an amount less than one gram, R.C. 2925.03 (a fifth-degree felony). His case proceeded to a trial before the bench.
 {¶ 10} The state presented the testimony of Cudo and one of his colleagues, together with the report that indicated the "rock" was not a controlled substance. Although Elliott moved for acquittal as to counts two and three, the trial court denied the motion.
 {¶ 11} The trial court ultimately sentenced Elliott to concurrent terms of incarceration of one year on count two together with six months on counts one and three, which the court "merged" for sentencing purposes.
 {¶ 12} Elliott has filed a timely appeal and challenges his drug trafficking convictions with the following three interrelated assignments of error:
 {¶ 13} "I. The Ohio Supreme Court is poised to rule on a similar case involving a sale of counterfeit drugs charged under R.C. 2925.03 as an "offer to sell" genuine drugs; this case should be stayed pending that decision, if not decided in Mr. Elliott's favor on other grounds.
 {¶ 14} "II. The court's decision finding the defendant guilty of drug trafficking was not supported by sufficient evidence and was against the manifest weight of the evidence as Mr. Elliott never made an "offer to sell" a quarter ounce of cocaine.
 {¶ 15} "III. Mr. Elliott's drug trafficking conviction and sentencing must be vacated because the sentencing provisions of R.C. 2925.03 link the convictions and penalty to the identity and weight of the drug; no conviction and sentence can be upheld in the absence of any controlled substance and this conviction is therefore supported by insufficient evidence and against the manifest weight of the evidence."
 {¶ 16} Elliott argues in his first assignment of error that this case should be stayed pending the Ohio Supreme Court's decision in its review of the Fifth Appellate District's opinion in State v. Chandler, supra. This court declines to do so.
 {¶ 17} Therefore, Elliott's first assignment of error is overruled.
 {¶ 18} In Elliott's second and third assignments of error, he essentially argues that his two convictions for violation of R.C.2925.03 are improper.
 {¶ 19} Elliott contends that pursuant to the appellate court's analysis in Chandler of the interplay between R.C.2925.03's guilt and sentencing provisions together with the passage into law of R.C. 2925.37, the earlier Ohio Supreme Court decisions in State v. Scott (1982), 69 Ohio St.2d 439 andState v. Patterson (1982), 69 Ohio St.2d 445 have been completely superceded. This court, however, considers the circumstances of this case are distinguishable from those presented in Chandler. Elliott's argument is thus persuasive only in part.
 {¶ 20} None of the counts of Elliott's indictment contained a specification. The appellate court in Chandler, on the other hand, was faced with a defendant who had been convicted of drug trafficking under an indictment which, in addition to the single base charge, contained a "Major Drug Offender" ("MDO") specification pursuant to R.C. 2929.14(D)(3). Since Chandler, who was acting as the go-between for his colleague Bledsoe on that occasion, had sold only baking soda, Chandler challenged his conviction for "drug" trafficking on the basis of the specification, arguing that he could not be lawfully convicted of the charge because the specification required an actual amount of a controlled substance. The appellate court agreed with this premise.
 {¶ 21} The appellate court then further explained its analysis in State v. Bledsoe, Stark App. No. 2003CA00403,2004-Ohio-4764, Chandler`s companion case. The court examined the interplay between R.C. 2925.03(C)(4)(g), which concerns significant amounts of drugs, and a specification brought under R.C. 2929.14(D)(3), and determined the amount of "controlled substance" was material in such cases for purposes of the penalty to be imposed.
 {¶ 22} The court determined that since, logically, a penalty cannot be imposed without a crime having been committed, if the facts of the case proved that no amount of "controlled substance" existed, the defendant in such a situation could be neither convicted nor sentenced under R.C. 2925.03. The statute thus restricted the state, and, on the count of his indictment that contained the specification, Bledsoe's conviction was sustained by neither sufficient evidence nor the weight of the evidence.
 {¶ 23} The charges against Elliott, on the other hand, did not contain any specifications. Rather, he offered the item he spit from his mouth to Cudo and accepted Cudo's money in exchange for the item, which weighed .17 grams.
 {¶ 24} Similarly, when Cudo inquired about "weight," Elliott did not respond negatively. Instead, he asked Cudo the quantity he desired, stated he could get it, quoted as his price the appropriate "street" price for a quarter ounce of crack cocaine, and told Cudo where he could be found upon Cudo's return for the drugs. Elliott apparently thus was "ready and willing to provide" to Cudo what he requested. State v. Pimental, supra at ¶ 26-28, 33.
 {¶ 25} This court does not find it necessary strictly to follow the Fifth District's analysis because we recently held that "[t]he proscribed conduct [under R.C. 2925.03(A)(1)] is the offer to sell, not the offering of a controlled substance."State v. Pimental, Cuyahoga App. No. 84034, 2005-Ohio-384, ¶25, citing State v. Scott, supra at 440.
 {¶ 26} The trial court, therefore, did not err either in denying Elliott's motions for acquittal or in finding him guilty of drug trafficking. Nevertheless, the state did not provide evidence sufficient to sustain the third-degree felony offense alleged in count two.
 {¶ 27} Based upon the circumstances of this case, examined in light of the Fifth Appellate district's analysis in Chandler,
Elliott's conviction on count two falls, as did his conviction on count three, under R.C. 2925.03(C)(4)(a), because the state failed to prove a specific amount of the drug actually existed. According to R.C. 2925.03(C)(4)(a), trafficking in cocaine, "[e]xcept as otherwise provided," is "a felony of the fifth degree."
 {¶ 28} For the foregoing reasons, Elliott's second and third assignments of error are sustained only in part.
 {¶ 29} Elliott's conviction on count three is affirmed, but his conviction on count two must be modified to reflect it was a felony of the fifth degree, and, as set forth in R.C.2925.03(C)(4)(a), the penalty must be adjusted accordingly.
 {¶ 30} This case is remanded for proceedings consistent with this opinion.
It is ordered that appellant and appellee share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been modified and affirmed as modified, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., P.J. and Colleen Conway Cooney, J.concur.