OPINION *Page 2 
{¶ 1} Defendant-appellant Robert Mitchell appeals from three drug trafficking convictions entered in the Jefferson County Common Pleas Court. He contends that there was insufficient evidence on what constitutes the bulk amount of Oxycontin, and he urges that his convictions are contrary to the manifest weight of the evidence. For the following reasons, appellant's convictions are affirmed. However, his penalty enhancement resulting from the bulk amount finding is reversed, and the case is remanded for resentencing on a fourth degree felony as opposed to the third degree felony on which his sentence is currently based.
 STATEMENT OF THE CASE {¶ 2} Appellant was indicted for three counts of drug trafficking in violation of R.C. 2925.03(A)(1). Counts one and three are the result of two different sales of crack cocaine and are fifth degree felonies under R.C. 2925.03(C)(4)(a). Count two deals with an offer to sell Oxycontin, a third degree felony since the amount offered was said to equal or exceed the bulk amount under R.C. 2925.03(C)(1)(c).
 {¶ 3} At trial, the state called a forensic scientist to the stand, and the informant and the detective testified about each transaction. For instance, on October 23, 2006, the informant was searched by police, wired and provided with $100 in cash. The informant set up a meeting with appellant, who was her friend and supplier. A detective watched her enter appellant's place of employment. He waited for her to exit and hand over .63 grams of crack cocaine, which appellant had sold to her for $100.
 {¶ 4} On October 24, 2006, the informant asked appellant to sell her six 80 milligram tablets of Oxycontin, which she said was for her friend. Appellant told the informant to come to his work where he then accepted $300 that had been provided to the informant by the police. Appellant left to retrieve the pills and was gone for over an hour. However, he was not able to procure Oxycontin at the time. He kept the money, apparently in anticipation that he would be able to fill the Oxycontin order for her in the future. Appellant gave the informant two methadone pills to "hold over" her friend.
 {¶ 5} On October 25, 2006, the informant returned to appellant's work to inquire about the status of his search for Oxycontin. As he still had not procured the *Page 3 
pills, she purchased .27 grams of crack cocaine from appellant for $50. The police then arrested appellant for the two completed crack cocaine sales and for the offer to sell Oxycontin. See R.C. 2925.03(A)(1) (no person shall knowingly sell or offer to sell a controlled substance).
 {¶ 6} A jury convicted appellant on all three counts as charged. Upon convicting him for the offer to sell Oxycontin, the jury made an additional finding regarding this offense, which specified that the amount he offered to sell equaled or exceeded the bulk amount. This additional finding resulted in a penalty enhancement. Thus, rather than being convicted of a regular fourth degree felony, which has a discretionary sentencing range of six to eighteen months with no requirement of prison time, the offer to sell Oxycontin became a felony of the third degree for which the court was required to impose as a mandatory prison term one of the prison terms prescribed for a third degree felony. See R.C. 2925.03(C)(1)(a), (c).
 {¶ 7} In a January 30, 2008 judgment entry, appellant was sentenced to a minimum sentence of six months on the fifth degree felonies and a minimum but mandatory sentence of one year on the third degree felony. All sentences were ordered to run consecutively. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} Appellant's first assignment of error provides:
 {¶ 9} "THE DEFENDANT'S MOTION PURSUANT TO CRIMINAL RULE 29 SHOULD HAVE BEEN GRANTED PERTAINING TO THE CHARGE OF VIOLATING O.R.C. § 2953.03(A)(1) (C)(1)(c) BECAUSE THE STATE OF OHIO OFFERED NO EVIDENCE SUBSTANTIATING THE `BULK AMOUNT REQUIREMENT AS ALLEGED."
 {¶ 10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. Thus, an appellate court reviews a denial of a Crim. R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency of the evidence claim. State v. Carter (1995), 72 Ohio St.3d 545, 553. *Page 4 
 {¶ 11} Sufficiency of the evidence is a legal test dealing with adequacy, as opposed to weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. State v.Goff (1998), 82 Ohio St.3d 123, 138. In other words, the evidence is sufficient if, after viewing the evidence in the light most favorable to the state, reasonable minds can reach different conclusions as to whether each element has been proven beyond a reasonable doubt.Carter, 72 Ohio St.3d at 553; State v. Bridgeman (1978),55 Ohio St.2d 261, 263.
 {¶ 12} Drug trafficking is committed when a person knowingly sells or offers to sell a controlled substance. R.C. 2925.03(A)(1). The offense is considered aggravated drug trafficking if the drug involved is any compound, mixture, preparation or substance included in schedule I or schedule II, with the exception of marijuana, cocaine, L.S.D., heroin and hashish. R.C. 2925.03(C)(1). Oxycodone is a schedule II narcotic that is an opiate or opium derivative. R.C. 3719.41 (A)(1)(n). See, also, R.C. 2925.01(A) (referring to R.C. 3719.01 for the meaning of schedule II).
 {¶ 13} Trafficking in such a substance is a fourth degree felony unless a penalty enhancement provision applies. R.C. 2925.03(C)(1)(a). In particular, if the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, then aggravated trafficking is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree. R.C. 2925.03(C)(1)(c).
 {¶ 14} The bulk amount of a compound, mixture, preparation or substance that is or contains any amount of a schedule II opiate or opium derivative is defined as an amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual. R.C. 2925.01(D)(1)(d). A standard pharmaceutical reference manual is defined as including standard references that are approved by the state board of pharmacy. R.C. 2925.01 (M)(3). *Page 5 
 {¶ 15} Here, it was established that Oxycontin is oxycodone. (Tr. 113). Further, it was demonstrated that appellant offered to sell the informant six 80 milligram tablets of Oxycontin for $300, which money the informant provided to appellant. The testimony of the informant and a detective, in addition to taped conversations, supported this claim. As appellant notes, the trial court instructed the jury on the relevant definition of the bulk amount. (Tr. 149-150, 179).
 {¶ 16} Appellant's only argument here is that there was insufficient evidence presented to support the contention that the amount of Oxycontin contained in six 80 milligram tablets equals or exceeds the bulk amount in order to elevate count two to a third degree felony. He characterizes the testimony on this matter as murky. The state urges that they presented sufficient testimony that six 80 milligram tablets of Oxycontin equals or exceeds the bulk amount.
 {¶ 17} At trial, a forensic scientist explained that the bulk amount depends on dosage and originally answered that she "believe[d]" the bulk amount of 80 milligram Oxycontin tablets to be six pills. (Tr. 109). Appellant seems to take issue with the fact that the expert used the word "believe" instead of using more definitive language.
 {¶ 18} However, the expert thereafter continued to discuss how the bulk amount is set by the Ohio State Board of Pharmacy when they determine based upon dosage how much a person can ingest in one day. She repeated two more times without qualification that the bulk amount of 80 milligram Oxycontin tablets is six pills. (Tr. 112, 114). She also specified that the daily dosage provided by the state pharmacy board is ninety milligrams. She then applied the statutory definition in R.C. 2925.01(D)(1)(d) of five times the maximum daily dosage to arrive at 450 milligrams, which bulk amount threshold is less than the 480 milligrams contained in six 80 milligram tablets. (Tr. 114).
 {¶ 19} After viewing the evidence in the light most favorable to the state, a reasonable person could conclude that six 80 milligram tablets of Oxycontin is more than the bulk amount. See, e.g., State v.Fisher, 5th Dist. No. 05CAA04020, 2006-Ohio-2201, ¶ 21, 24-25; State v.Cole, 12th Dist. No. CA2004-01-007, 2005-Ohio-2274, ¶ 30. Accordingly, appellant's specific argument on the bulk amount is without merit. *Page 6 
 {¶ 20} However, since there did not actually exist any Oxycontin here, there is a different problem with the sufficiency of the evidence surrounding the bulk amount for purposes of penalty enhancement. It is well-established that drug trafficking can occur even where no drugs exist due to the statutory language "sell or offer to sell". SeeState v. McKenzie (Sept. 12, 1996), 7th Dist. No. 06-JE-2 (defendant took money to buy drugs and never returned). This is based upon the Ohio Supreme Court's defining "offer" as used in R.C. 2925.03(A)(1) as a declaration of one's readiness and willingness to sell drugs and their explanation that the offense entails an offer to sell drugs, not an offer of the drugs themselves. See State v. Scott (1982),69 Ohio St.2d 439, 440. The use of "offer to sell" disjunctively with "sell" has been described as an attempt by the legislature to curtail the marketing phase of drug trafficking. Id. at 441. See, also, State v.Patterson (1982), 69 Ohio St.2d 445, 447-448 (reiterating that failure to deliver is not a defense). Still, these cases merely dealt with the drug trafficking offense in R.C. 2925.03(A)(1) and did not involve the penalty enhancement provisions in R.C. 2925.03(C).
 {¶ 21} When it comes to enhancing the penalty, the Supreme Court has more recently stated that the statutory hierarchy of penalties based upon the identity and amount of the drug presupposes that a detectable amount of a controlled substance is present within the substance before the penalty enhancement applies. State v. Chandler, 109 Ohio St.3d 223,2006-Ohio-2285, ¶ 18. In that case, the defendants pretended to sell crack but actually delivered only baking soda. They were convicted of drug trafficking and also received the highest penalty enhancement for offering to sell more than 100 grams of crack cocaine. Id. at ¶ 19. The defendants were not charged with the separate crime of trafficking in counterfeit drugs, which requires knowledge that the drugs are counterfeit. See R.C. 2925.37.
 {¶ 22} The Supreme Court determined that the defendants' convictions of drug trafficking could stand under Scott and Patterson because they offered to sell drugs in violation of R.C. 2925.03(A)(1), regardless of whether actual drugs were involved. Id. at ¶ 9. However, the Court reversed the penalty enhancement, ruling that the state was required to prove the identity of the substance as well as a detectable amount of that substance, not for conviction but to impose the penalty enhancement. Id. at ¶ 16. *Page 7 
 {¶ 23} In formulating its rationale, the Supreme Court noted that by the terms of the penalty provisions in R.C. 2925.03(C), the substance must be or contain the drug alleged. Id. at ¶ 18. "This language presumes that a detectable amount of cocaine is present within the substance before the penalty enhancement applies." Id. The Court reiterated that the statute is clear that a "substance offered for sale must contain some detectable amount of the relevant controlled substance" before a person can be sentenced under a penalty enhancement such as R.C. 2925.03(C)(4)(g). Id. at ¶ 21.
 {¶ 24} The Court concluded that the jury's finding that the amount of the drug equaled or exceeded 100 grams of crack cocaine was contrary to fact, for the substance involved was 130.87 grams of baking soda. Id. at ¶ 16, 19. Consequently, regardless of the fact that a defendant offers to sell crack cocaine, the penalty enhancement is inapplicable where there is no crack cocaine to be detected. The Court thus has separated the provisions of the drug trafficking statute into distinct rules regarding an offer to sell drugs: one regarding the conviction for the offer to sell, where proof of an actual drug is not required; and one regarding the bulk amount enhancement, where proof of an actual drug is required.
 {¶ 25} We note that the dissenting justices in Chandler argued that the separate holdings allowing the conviction but then disallowing the penalty enhancement were contradictory and contrary to the statute's language. The dissent opined that the enhancement applies to the knowing offer to sell a certain amount of a controlled substance regardless of what was actually sold. Id. at ¶ 35 (Resnick, J., dissenting); ¶ 53-54, 56 (O'Connor, J., dissenting). It was noted that even the lowest penalty provisions use the "drug involved" language as different drugs involve different degrees of offenses. Id. at ¶ 55 ("The `amount of the drug involved' is more properly construed as the `amount of the drug involved in the offer,' at which time the trafficking crime is complete").
 {¶ 26} Nevertheless, their arguments were not persuasive to the majority. As such, the current state of law is that a penalty enhancement provision cannot be used where there were no detectable traces of the alleged substance. We could stop here and reverse appellant's enhancement on this basis; however, due to a First District case distinguishing Chandler, we shall continue our analysis. For the following *Page 8 
reasons, we hold that there is no valid reason for us to distinguish appellant's offer to sell Oxycontin resulting in no sale and Chandler's offer to sell crack cocaine resulting in a sale of baking soda. Rather, if Chandler is entitled to have his penalty enhancement struck, then so is appellant.
 {¶ 27} The First District has distinguished Chandler on the grounds that a counterfeit substance that has been tested is different than a substance that is offered to be sold but that is never delivered.State v. Garr, 1st Dist. No. 60794, 2007-Ohio-3448. They focused on the defendant's statement that the crack cocaine he intended to sell was high quality. Id. at ¶ 6. The court concluded that circumstantial evidence can be utilized to establish that there was "some detectable amount of the relevant controlled substance" as required byChandler. Id. at ¶ 5.
 {¶ 28} Even if the Garr court's interpretation and method of distinguishing Chandler were correct, which is highly debatable,Garr itself is distinguishable from the case at bar. Although appellant offered to sell the informant Oxycontin, there is no evidence circumstantial or otherwise that there was some detectable amount of Oxycontin in some drugs offered for sale. Rather, the only evidence was that appellant was attempting to find some Oxycontin and that he never did find any pills to purchase in order to resell them to the informant. In a case where a defendant is trying to find a drug for a buyer but never finds it, the penalty enhancement provision, which the Supreme Court has held requires some detectable amount, is not satisfied.
 {¶ 29} Notably, there is an appellate case out of the Eight District, which is contrary to the First District's Garr case and which was decided while the Chandler appeal was pending in the Supreme Court.State v. Elliott, 8th Dist. No. 86461, 2006-Ohio-1092. InElliott, the defendant offered to sell a quarter of an ounce of crack cocaine for $200 to an undercover officer. The officer said that after he tried the crack that he had just purchased for $20 from the defendant, he may return for the quarter ounce. Id. at ¶ 7. The defendant was immediately arrested. The $20 rock turned out to be baking soda and the verbally offered quarter ounce of crack cocaine was never recovered.
 {¶ 30} The defendant was convicted on the following counts: (1) trafficking in a counterfeit substance by selling the rock of baking soda; (2) offering to sell the quarter *Page 9 
ounce of crack cocaine that was never produced; and (3) offering to sell the $20 worth of crack cocaine that turned out to be baking soda. It is the treatment of the second count that is relevant to our analysis. Regarding this count, the defendant's penalty was enhanced to a third degree felony upon the jury's finding that he offered to sell an amount equaling or exceeding five grams but less than ten grams.
 {¶ 31} The Eighth District upheld the drug trafficking conviction for the offer to sell crack cocaine under count two. Id at ¶ 26, 29. However, the court held that the state did not provide sufficient evidence to sustain the penalty enhancement to a third degree felony. Id. at ¶ 26. Adopting the Fifth District's Chandler analysis as to the penalty enhancement, the Eighth District concluded that the state was required to prove a specific amount of the drug actually existed in order to obtain penalty enhancement. Id. at ¶ 27. Thus, theElliott court modified the conviction for offering to sell the quarter ounce from a third degree felony to a fifth degree felony, which is the lowest crack cocaine penalty provided in R.C. 2925.03(C). Id. at ¶ 3, 27.
 {¶ 32} Considering that we now have the benefit of the Supreme Court'sChandler decision in a baking soda case, the Elliott court's handling of the issue of a case involving drugs that were never produced or recovered has even more support. We note here that the Ohio Attorney General's Amicus Brief in the Supreme Court's Chandler case specifically equated the defendant who sells a counterfeit substance with the defendant who does not have any substance. That brief stated:
 {¶ 33} "This case, rather, turns on whether R.C. 2925.03 applies to individuals who offer to sell crack that turns out not to exist, either because it is fake or because the defendant literally has nothing tosell." (Emphasis added).
 {¶ 34} To conclude the analysis, the Supreme Court's Chandler case ruled that the penalty enhancement provisions in the drug trafficking statute cannot be used where there is no detectable trace of the alleged substance. Pursuant to this precedent, then we hold that where a defendant offers to sell six Oxycontin tablets but is unable to procure the pills for resale, the state has failed to show a detectable amount of a controlled substance as required for penalty enhancement. There is no reason to distinguish between Chandler's baking soda that did not contain drugs and appellant's complete lack of drugs. This is especially true in a case where it is *Page 10 
established that appellant unsuccessfully went looking for drugs to resell and kept meeting with the informant thereafter (as opposed toGarr where the court thought the defendant may have actually had crack to sell but merely failed to hand it over due to a failure to produce payment). For all of the foregoing reasons, we hold that there is insufficient evidence to support the penalty enhancement provision.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 35} Appellant's second assignment of error contends:
 {¶ 36} "THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 37} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. Thompkins, 78 Ohio St.3d at 387. The reviewing court determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. Where the criminal case was tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389. This is only done in exceptional circumstances. Id. at 387.
 {¶ 38} When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v.Gore (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence, draw rational inferences and judge the credibility of witnesses by viewing their demeanor, voice inflections and gestures. See Seasons Coal Co. v. Cleveland (1994),10 Ohio St.3d 77, 80; State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 39} After setting forth the law on weight of the evidence, appellant merely concludes that the jury was misguided and created a miscarriage of justice regarding all three counts. Appellant does not set forth any argument, cite to the record or mention any particular view of the evidence he wishes we would adopt. This is violative of App. R. 16(A)(7), which provides that an appellant's brief shall contain an argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. *Page 11 
Pursuant to App. R. 12(A), the court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A).
 {¶ 40} In any event, the testimony of the informant is not incredible. Although the defense attempted to discredit her as being a drug addict who was looking to benefit herself and seek retribution on appellant's friend who had informed on her the previous spring, the jury could find her version of the transactions to be credible. The jury also heard taped conversations between the informant and appellant and heard the testimony of the detective who searched the informant prior to the sales and retrieved the drugs thereafter. Upon reviewing all of the evidence, we conclude that it was not a manifest miscarriage of justice to believe the testimony of the informant. This assignment of error is overruled.
 {¶ 41} For the foregoing reasons, appellant's convictions are affirmed. However, the additional finding regarding the penalty enhancement, which elevated the offense from a fourth degree to a third degree felony, is reversed and this case is remanded for modification of the degree of the offense and for resentencing accordingly.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1